## Lewis *versus* Nenzel.

*The doctrine of* Res adjudicata *applied to Evidence in Ejectment.*

1. Evidence that a mortgage and bond had been procured through false and fraudulent misrepresentations, is not admissible in an ejectment for property sold under the mortgage, when the same defence had been ineffectually set up in a prior *sci. fa.* on the mortgage, and on a rule to open the judgment entered on the bond.

2. An offer to prove that a paper on which the right of one of the parties depends was procured through false and fraudulent misrepresentations, without stating what they were, should be rejected by the court.

ERROR to the District Court of *Philadelphia*.

This was an action of ejectment, brought July 11th 1859, by Anna Maria Lewis against Frederick Nenzel, Jr., for a lot of ground, with the buildings and improvements thereon erected, situated on the west side of Third street, between Poplar and Culvert streets, Philadelphia.

The property in dispute had been conveyed to Joseph Lewis and Mary Lewis his wife, their heirs and assigns, in two purparts, viz., one by William Steinmetz, and the other by Lawrence Lawrence. The grantees remained in possession until 1836, when Joseph Lewis died, leaving his wife Mary in possession. By the will of Mrs. Lawrence, the mother of Mrs. Lewis, the sum of $1500 had been invested, the interest of which was to be paid to her semi-annually during her life, and the principal on her death, and when her youngest child arrived at the age of twenty-one years, to be divided among her four children, Anna Maria, Wilhelmina, Joseph, and Hezekiah.

The sons, who were members of the "Unity Beneficial Society," contracted, in 1845, with the society for a loan of $600, offering as security for it, their interest in this legacy, with the assent of Mrs. Lewis and her daughters.

Under the impression that they were merely giving their formal assent to this arrangement, the agents of the society, as was averred, induced Mrs. Lewis and all the children to execute a judgment-bond for $600, and a mortgage for the same amount, on the property above mentioned. In 1847, Mrs. Lewis devised the property to her two daughters.

In 1849, the Unity Beneficial Society assigned the bond and mortgage to James Goodman, a member, who it was alleged, had full knowledge of the fraud under which they were obtained. He sued out a *sci. fa.* against Mary Lewis, and Joseph, Hezekiah, Anna Maria, and Wilhelmina Lewis. It was said that there was no service of this writ, and that although the words "service accepted" appear on the appearance docket, yet it did not there appear by whom nor for whom this was done. The papers in the

[Lewis *v.* Nenzel.]

cause were missing, but an exemplification of the record in this case showed that J. R. Dickerson appeared and took defence for all the defendants who, November 2d 1849, pleaded *non est factum.* The docket showed a verdict and judgment, June 27th 1851, in favour of plaintiff for $110.09 damages. On the 27th of October 1849, Goodman entered up the judgment-bond which had been assigned to him by the society, and on the same day sued out a writ of *fi. fa.*, under which this property was levied upon and condemned.

In 1850 a *vend. exp.* was issued, and stayed by order of the court. Under an *alias vend. exp.* the property was sold, but the sale was set aside by the court. A pluries writ then issued, under which the property was sold to Thomas King for $800, but the terms of sale were not complied with by him. On the 25th of September 1850, a second pluries writ of *vend. exp.* was issued, under which the property was sold to Goodman for $700.

In 1851, Goodman sued out a *levari facias* on the judgment which he had recovered on the mortgage transferred to him by the society, under which the property was sold and was purchased by him for $125, taking deeds from the sheriff under both sales, the one dated November 23d 1850, the other July 19th 1851. In 1853, Goodman made his will, appointing his wife executrix, and empowering her to sell this property, under which power it was conveyed by her to Frederick Nenzel, Jr., the defendant. Mrs. Lewis died in 1857, at which time her will, devising the property to her two daughters, was proved; and on the 11th of July 1859, this action of ejectment was commenced by Anna Maria Lewis.

On the trial, the plaintiff gave in evidence the deeds from Steinmetz and Lawrence to Joseph and Mary Lewis, the death of Joseph Lewis, the will of Mary Lewis, and her death, with the number and names of their children, as above stated—the fact that Joseph and Mary entered into possession in 1826 or 1827, and remained there after the purchase from Steinmetz and Lawrence, the possession of the defendant, and rested.

The defendant then put in evidence the mortgage from Mary Lewis and her children to the Unity Beneficial Society of Philadelphia, which had been recorded; also under objection and exception of plaintiff's counsel, exemplifications of the record in the suits on the bond and mortgage, which consisted only of the docket entries, the sheriff's deeds to Goodman, his will, and the deed from his executrix to the defendant, and closed.

The plaintiff then offered to prove "that Mary Lawrence had left a legacy of $1500, in trust, the interest to be paid to her daughter, Mary Lewis, during her lifetime; and after her death the principal to be divided amongst the children of said Mary Lewis, being the said Joseph, Hezekiah, Wilhelmina, and Anna Maria

[Lewis *v.* Nenzel.]

Lewis.   That the legacy was secured upon the property in question by a mortgage to one Mr. Trout.   That Joseph and Hezekiah Lewis were members of 'The Unity Beneficial Society,' and desired to obtain a loan therefrom, and as a security for such loan offered to mortgage *their interest* in the legacy of $1500. That the society agreed to take this security, but prepared a bond and mortgage upon the property in question, instead of the interest in the legacy; and *by and through fraudulent and false representations obtained the* signatures of Mary Lewis (the mother) and her four children—Joseph, Hezekiah, Anna Maria, and Wilhelmina—to said bond and mortgage.   That before James Goodman took an assignment of said bond and mortgage, he was fully informed and knew of the fraud practised in the procurement of the same; and that the defendant Nenzel was also informed and had full knowledge of this fraud before and at the time he purchased the property in question."   To the admission of this evidence the defendant, by his counsel, objected, and the court sustained the objection, and directed the jury to render a verdict for the defendant, which they did.   To which ruling and direction of the court, the plaintiff, by her counsel, excepted and tendered her bill of exceptions.

There was a verdict and judgment in favour of defendant, whereupon the plaintiff sued out this writ, and assigned for error here the refusal of the court below to admit the evidence contained in the above offer.

*Earle* and *Woodward*, for plaintiff, cited and relied on Gilbert *v.* Hoffman, 2 Watts 67; Hoffman *v.* Strohecker, 7 Watts 86; Jackson *v.* Summerville, 1 Harris 359; Caldwell *v.* Walters, 6 Harris 79; McCaskey *v.* Graff, 11 Harris 326; Riddle *v.* Murphy, 7 S. & R. 230; Stewart *v.* Blum, 4 Casey 229; Miller's Appeal, 6 Casey 492, to show that the bond and mortgage on which defendant's title rested, was fraudulent and void.

*Heyer*, for defendant in error.—The plaintiff is too late with this objection.   The widow and children were of full age when the bond and mortgage was executed, and able to read it. Since then fourteen years have elapsed; there has been a trial on the mortgage, a hearing under a rule to open the judgment— the sales made by the sheriff contested at every step, the parties having all had their day in court, and now after repeated transfers, and expenditure of money in improving the property, this allegation of fraud is too late.

No case cited by the plaintiff in error is strong enough to invalidate the maxim *sit finis litium*.   The question raised here has been passed upon by a competent tribunal, in a proper action, and is disposed of for ever.

[Lewis *v.* Nenzel.]

The opinion of the court was delivered, February 14th 1861, by Woodward, J.—The single error assigned is in the rejection of the offer to prove that the bond and mortgage under which the defendant obtained title to the land in question, were procured through false and fraudulent misrepresentations. What the false and fraudulent representations were that induced Mrs. Lewis and her four children to sign the bond and mortgage, were not suggested in the offer; and this was enough to condemn it. But there was a more substantial reason for rejecting it.

The assignee of the mortgage issued a *scire facias* upon it to June Term 1849, which was returned "service accepted." An affidavit of defence was filed, a plea of *non est factum* put in, and a jury trial had which resulted in a verdict and judgment for the plaintiff. Pending that suit, judgment was entered on the bond which accompanied the mortgage, and, on a rule to show cause why the judgment should not be opened, and the defendants let into a defence, the court passed again, or might have passed, on the merits of the case. The rule was discharged. Mrs. Lewis and her four children, the obligors and mortgagors, were the defendants in those proceedings, and if the bond and mortgage had been fraudulently obtained, they surely had ample opportunity to show it. Then was their time, their day in court; and if they did not improve it, the legal effect of the proceedings is none the less conclusive: Kelheffer *v.* Herr, 17 S. & R. 319.

After sale of the mortgaged premises, the attempt was idle to resist the title by reopening and agitating anew the very questions which had been tried, or might have been, in the former suits. *Res adjudicata* was an all-sufficient answer to the plaintiff's offer, and therefore it was properly rejected.

The judgment is affirmed.