# NEW YORK AND TEXAS LAND COMPANY *v.* VOTAW.

## ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF TEXAS.

No. 7. Submitted October 10, 1893. — Decided October 23, 1893.

In an action to try the title to land, where there is conflicting evidence as to certain natural objects named in running the lines, an instruction to the jury that if, after fully considering the conflicting evidence they are left doubtful and uncertain, they will be justified in locating the grant by referring to such of the natural objects as are certain, is not error.

Such is the effect of the instruction to the jury in this case.

THE case is stated in the opinion.

*Mr. Charles W. Ogden* for plaintiff in error.

No appearance for defendant in error.

MR. JUSTICE SHIRAS delivered the opinion of the court.

This was an action brought in the Circuit Court of the United States for the Western District of Texas to try the title to a large tract of land in the county of Dimmitt and State of Texas.

The New York and Texas Land Company, the plaintiff, based its claim upon patents issued by the State of Texas to the International and Great Northern Railroad Company, and upon certain deeds of conveyance from said company through several parties down to the plaintiff. The defendant's title originated in a grant of land by the State of Texas to the heirs of one Juan Francisco Lombrano. This grant appears to have been made by the State in recognition of a previous Spanish grant made in 1812 to Lombrano, but the defendant, though reading this Spanish grant as evidence on the question of the boundaries of the tract in question, relied wholly on the patent from the State of Texas.

The record presents no question as to the validity of the title

of either party, nor any bill of exception touching the admission or rejection of evidence. It was admitted by the plaintiff that the defendant had a valid title to all of the land included in the Lombrano grant, and that such title was prior in time to that asserted by the plaintiffs. The sole controversy was whether the elder Lombrano grant included the lands subsequently granted to the International and Great Northern Railroad Company. This was the issue that was before the court and jury for determination, and to which the evidence of both parties was directed.

We are not asked by the plaintiff in error to consider the evidence in the cause with a view of determining whether it warranted the jury in their verdict in favor of the defendant. The errors complained of are found in certain portions of the charge of the court to the jury, and our only concern with the evidence is to enable us to perceive whether the court committed error in its instructions to the jury.

The description contained in the Spanish grant, and which is followed in the patent made by Texas to the Lombrano heirs, does not give courses, but the lines are run from one natural object to another. The controverted lines are the southern and eastern boundary lines of the Lombrano grant; that is, the lines called for in the Spanish grant as running from Tasa Creek on the Rio Grande, to the junction of the San Ambrosia and San Pedro Creeks, and following up the San Pedro Creek and terminating near its head, and the line running from the head of the San Pedro Creek to the Carrizo Springs.

Several surveys were made, as well under the grant to the Lombrano heirs, as that patented by Texas in 1883, to the International and Great Northern Railroad Company. It appears by these surveys and by the testimony of the engineers who made them, that there were either two creeks used as natural objects in running the lines, viz., San Pedro Creek and San Pablo Creek, or that one creek was known by different persons and at different times, by the two names.

In this condition of the evidence the court instructed the jury as follows:

"1. You are to determine from the evidence whether the

San Pedro Creek called for in the field-notes of the grant is the creek now called the San Pedro, or whether the creek called at this time the San Pablo was, at the time this survey was made by the surveyor, called the San Pedro Creek; and you will look to all the calls along the creek, and from all the evidence adduced you will determine this, as well as all other questions of fact, by a preponderance of the evidence, wherever the evidence is found to be conflicting.

"2. I may here say that if the lower creek, now called the San Pablo, is the south line of the Lombrano grant, then your verdict will be for the defendant.

"3. If from the evidence you find that some of the calls for natural objects in the grant cannot be ascertained, or, in other words, if the natural objects are not all identified and some of them are, then, and in that case, you will locate the grant with reference to those that are made certain, whether course and distance would reach the natural objects or not; but in case no natural or artificial objects called for can be found and established, then artificial monuments would be of next controlling power; these failing, then course and distance would be the next best means of locating the true boundary of the grant.

"4. From an established point it is competent to reverse the calls, if by so doing we can better ascertain the true boundary of the grant.

"5. The map required by law to be returned by the surveyor with his field-notes, upon which a patent is issued, may properly be considered in connection with the field-notes, and is part thereof in locating the lines of the survey, unless there are calls that control the same.

"6. The field-notes of a survey returned to the General Land Office for patent, and upon which a patent issues, are, to all intents and purposes, a part of the patent; and if a material call in such field-notes is omitted from the patent, a certified copy of such field-notes, duly certified from the General Land Office, will serve to supply such omission, and you will regard the calls in such certified copy of field-notes the same as if correctly copied in the patent.

“7. If you find from the evidence, after applying the evidence to the calls of the patent, that some or any of the natural objects called for are uncertain or doubtful, and some are certain, the certain ones will govern you in establishing the boundaries of the land.

“8. You are not confined to begin the survey at the beginning or any other particular corner; any intermediate corner or the last corner as you find them on the ground may be adopted by you for the purpose of locating the grant, always giving precedence to the corner that is best identified and that best harmonizes the various calls of the patent in the construction of the survey.”

All of these instructions are assigned for error, but the third, fourth, and seventh clauses are those chiefly complained of.

The argument on behalf of the plaintiff in error concedes, in effect, that the instructions do, in a general way and apparently correctly, state the rules of law pertaining to conflicting boundaries; but it is contended that the instructions given were not fairly applicable to the facts in evidence, and presented the issues to the jury in a manner that must have withdrawn their attention from the real question. This contention of the plaintiff in error may be most favorably stated in the following language of the brief of its counsel:

“It is quite true that the court in its general charge to the jury instructed them that they should determine which of the creeks was called the San Pedro at the time the survey was made by a preponderance of evidence, but it is also true that in the sixth clause of the general charge to the jury the court there practically instructed them that they should locate the grant with reference to the natural objects which were made certain. It is submitted that in view of the issues presented in this case and in view of the evidence which was before the jury, even this sixth clause of the general charge was not proper to be given, although the erroneous doctrine is not so clearly stated in this clause of the general charge as it is in the special charge asked by the defendant’s counsel. It, however, must be evident that the idea that it was proper for the jury to disregard any natural object called for in the grant,

in regard to the true location of which there was any conflict of evidence, must have been thoroughly impressed upon the minds of the jury when they were practically so instructed in the general charge of the court and distinctly and unmistakably so instructed in the special charge given at the request of the counsel for the defendant in error.

"It is possible and even probable that a boundary case might arise in which it would be proper for the court to instruct the jury that if any of the objects called for in the grant were not identified by the evidence, they could look to some other calls in the grant to determine its true locality. It is, however, difficult to conceive of a case in which it would ever be proper for the court to instruct the jury that if any of the objects called for in the grant are uncertain or doubtful, they should be disregarded for the reason that if it were a correct instruction in any case it would also be a correct instruction in any other case in which the true location of any objects marking the boundary of a grant was in any manner rendered doubtful by the evidence; and as this would be the situation in every litigated case in which there was a contest in regard to the boundary or in which there was a conflict of evidence, it would of necessity follow that this would be a proper charge to be given in every boundary case in which the object of the investigation was to determine the boundaries of the grant by ascertaining the true location of the objects called for as marking its boundaries. It also follows that it would therefore be proper for the jury in any contested case to disregard all evidence in relation to the very object to ascertain the true location of which the proceeding was had. The very fact that there is a litigation necessary for the purpose of ascertaining the true location of an object in itself renders it doubtful and uncertain, and if the doctrine announced in the charge complained of is correct, being doubtful and uncertain, the jury will not determine its location, there fore the litigation would be useless; there would be no need of litigation with regard to the true location of an object called for in a grant with regard to which there was absolutely no doubt or uncertainty, and if that doubt or uncertainty can-

not be solved by a judicial investigation it is useless to litigate over the question.

"It must also be evident that if it were proper to instruct the jury in a boundary case that they should make up their verdict without regard to any facts which might be disputed, it would also be proper to so charge them in any other case, and thus all litigation would be at an end."

This criticism assumes that the court instructed the jury that if there was conflicting evidence as to the existence or location of some of the natural objects called for in the respective grants, such objects should be wholly disregarded, and that the verdict should be controlled by the evidence referring to such natural objects as were certain. Such an instruction would, indeed, as argued on behalf of the plaintiffs in error, be equivalent to telling the jury to disregard all evidence in relation to the very object to ascertain the true location of which the proceeding was had, and the mere fact that there was contradictory evidence as to the true location of a boundary line would decide the litigation in favor of the party in possession.

But we are unable to see that these instructions express so unreasonable a proposition. Fairly read, and as the jury must have understood them, we understand these instructions to say not that if there is conflicting evidence as to certain natural objects, the jury should put such evidence and the controverted facts wholly out of view, and look only to other and undisputed facts, but that if, after considering the conflicting evidence, the jury are left doubtful and uncertain, they will be justified in locating the grant by referring to such of the natural objects as are certain. In terms, as well as in substance, the court told the jury that they should determine the true location and name of the boundary creek, as well as all other questions of fact in the case, "from all the evidence, and by a preponderance of the evidence, wherever the evidence was found to be conflicting." The seventh instruction was explicit that "if you find from the evidence, *after applying the evidence to the calls of the patent,* that some or any of the natural objects called for are uncertain or doubtful, and some

are certain, the certain ones will govern you in establishing the boundaries of the land." Plainly, this does not mean that the jury should refuse to consider and weigh the evidence if conflicting, but that if, after so considering it, there should be doubt as to the proper conclusion to be drawn, such doubts might be resolved by referring to natural objects whose location was certain.

These observations likewise dispose of the further contention that the court below erred in instructing the jury that "from an established point, it is competent to reverse the calls if, by so doing, we can better ascertain the true boundary of the grant." The argument admits that this instruction is formally correct, and only expresses a familiar rule of construction in boundary cases. But it is claimed that, as the court had instructed the jury to disregard all natural objects with respect to which the evidence was conflicting, the jury could, in reversing the calls, skip or disregard such, and run the lines only by objects in regard to which there was no dispute. But, as we have seen, the court had not instructed the jury to disregard the natural objects as to which there was conflicting evidence, but that if they were unable to reach a satisfactory conclusion from the conflicting evidence they should specially regard those facts that were clearly shown. Hence the jury would not, in reversing the calls of the patent, disregard the points and objects in dispute, but would determine, "from all the evidence and by the preponderance of the evidence," the true boundaries of the grant.

We are, therefore, of opinion that there was no error in the instructions of the court to the jury, and the judgment of the Circuit Court is

*Affirmed.*