[Civil No. 3748. Filed January 11, 1937.]

[64 Pac. (2d) 101.]

FRANK R. STEWART, Appellant, v. PHOENIX NATIONAL BANK, a Corporation, Appellee.

36

Mr. L. C. McNabb and Mr. O. B. DeCamp, for Appellant.

Messrs. Chalmers & Fennemore, Mr. H. M. Fennemore, and Mr. Henry W. Allen, for Appellee.

LOCKWOOD, J.—This is an appeal from a judgment of the superior court of Maricopa county,

wherein Frank Stewart was plaintiff and Phoenix National Bank, a corporation, was defendant. The facts which led up to the appeal may be stated as follows:

Plaintiff, by his complaint, sought to recover damages for a loss alleged to have been sustained through the fraudulent foreclosure of a mortgage given by him to defendant as security for an original indebtedness of some $17,000. The defendant filed a motion to strike, one to make more definite and certain, a plea in bar, and a general demurrer. The court denied the motions and overruled the demurrer, and the case went to trial on the merits before the court sitting with a jury. Shortly after the trial opened, and while plaintiff was testifying as the first witness, the court sustained an objection to the introduction by plaintiff of any evidence tending to show the invalidity of the mortgage above referred to or questioning defendant's right to foreclose it, and also sustained an additional objection to the introduction of any further evidence on the ground that the complaint did not state facts sufficient to sustain a cause of action, thus in effect reversing its ruling on the general demurrer. Plaintiff then made an offer of proof, and, defendant moving that the action be dismissed, it was so ordered by the court, and later a formal judgment of dismissal was rendered as required by the rule. After the usual motion for new trial had been overruled, this appeal was taken.

There are some eight assignments of error, but we think that there are but two questions which we need consider in disposing of the case. They are (a) the extent to which the trial court may go in taking judicial notice in one action of the record in another action which has been tried and gone to judgment in the same court, and (b) whether the complaint herein states a cause of action against defendant.

██ We consider the first question. The ordinary rule in the state courts is that they do not take judicial notice of proceedings in another cause in the same court. 23 C. J. 113, and cases cited. The federal rule seems to be different. In *Butler* v. *Eaton*, 141 U. S. 240, 11 Sup. Ct. 985, 986, 35 L. Ed. 713, the Supreme Court of the United States says:

"We think, therefore, that the evidence of the judgment recovered was properly admitted as a bar to the receiver's title to recover in reference to the new stock. And it cannot be said, therefore, looking to the record in this case alone, that there is error in the judgment now before us. But, by our own judgment just rendered in the other case, the whole basis and foundation of the defense in the present case, namely, the judgment of the supreme judicial court of Massachusetts, is subverted and rendered null and void for the purpose of any such defense. While in force, an execution issued upon it, and a sale of property under such execution, would have been effective. And when it was given in evidence in this case it was effective for the purpose of a defense, but its effectiveness in that regard is now entirely annulled. Are we, then, bound to affirm the judgment, and send it back for ulterior proceedings in the court below, or may we, having the judgment before us, and under our control for affirmance, reversal, or modification, and having judicial knowledge of the total present insufficiency of the ground which supports it, set it aside as devoid of any legal basis, and give such judgment in the case as would and ought to be rendered upon a writ of error *coram vobis, audita querela,* or other proper proceedings for revoking a judgment which has become invalid from some extraneous matter? . . .

"The judgment complained of is based directly upon the judgment of the supreme judicial court of Massachusetts, which we have just reversed. It is apparent from an inspection of the record that the whole foundation of that part of the judgment which is in favor of the defendant is, to our judicial knowledge, without any validity, force, or effect, and ought never to have existed. Why, then, should not we reverse the judg-

ment which we know of record has become erroneous, and save the parties the delay and expense of taking ulterior proceedings in the court below to effect the same object?''

And this rule has been affirmed by that tribunal many times. *New York & Texas L. Co.* v. *Votaw,* 150 U. S. 24, 14 Sup. Ct. 1, 37 L. Ed. 983; *Bienville Water Supply Co.* v. *Mobile,* 186 U. S. 212, 22 Sup. Ct. 820, 46 L. Ed. 1132; *Craemer* v. *Washington,* 168 U. S. 124, 18 Sup. Ct. 1, 42 L. Ed. 407. We think the federal rule more consonant with common sense and modern practice, and adopt it as the law of this state. But even in most of those jurisdictions which adhere to the stricter rule there are exceptions, and one of these is that where in his complaint a party refers to the other proceeding or judgment, and specifically bases his right of action in whole or in part on something which appears in the record of the previous cause, the court, in passing on a demurrer to the complaint, will take judicial notice of the matters appearing in the record in that case without formal proof thereof. *Cogburn* v. *Callier,* 213 Ala. 38, 104 So. 328; *Schneider* v. *Decker,* 144 Okl. 213, 291 Pac. 80. And allegations of a pleading, which are contrary to facts of which judicial notice is taken, are treated as a nullity. *Verde W. & P. Co.* v. *Salt River V. W. U. Assn.,* 22 Ariz. 305, 197 Pac. 227. We think that since plaintiff, by his complaint, based his action to a very great extent upon matters which appear in a certain mortgage foreclosure case between the same parties, which had been heard in the same court, that the court in passing on the sufficiency of the complaint was entitled to consider, and properly did consider, the entire record in such previous case without the necessity of its being offered in evidence, and, if such record contradicted the allegations of the complaint or was a defense thereto, the demurrer to the complaint was properly sustained,

and the case taken from the jury and the action dismissed. We therefore consider the sufficiency of the complaint, viewed in the light of the record in cause No. 37255A, the mortgage foreclosure case referred to in the complaint.

The complaint is voluminous and we therefore summarize it, except in so far as we think necessary to quote *verbatim* therefrom. It commences with the usual allegations of residence and character of parties, stating that defendant has for years been engaged in the banking business in Arizona. It then alleges as follows:

"That on or about the 4th day of March, 1931, and for about twenty-three years prior thereto, the plaintiff was a customer of the Phoenix National Bank, and the officers and directors of said Phoenix National Bank had during all of said twenty-three years been the plaintiff's financial advisor; at divers times prior to the said 4th day of March, 1931, the plaintiff had borrowed large sums of money from the said defendant bank without giving any security or collateral therefor, and had repaid the same, and had been advised on divers occasions by the officers and directors of the bank of the bank's friendship for him, and the plaintiff had always believed that the bank and its officers and agents would not take any financial advantage of him."

Continuing, it sets up that about the 4th day of March, 1931, plaintiff was indebted to the defendant bank in the sum of $17,800, evidenced by unsecured notes; that the defendant, desiring to obtain for itself all of plaintiff's property for the debt aforesaid, and with the intent to deceive and defraud plaintiff out of his property, requested him to give a mortgage on certain real estate which he owned as security for the debt. It then alleged:

"That at the time of the defendant requesting the said note and the said mortgage securing said note,

the defendant through its officers and agents, well knowing that the plaintiff would and did rely upon their representation, wilfully and wickedly and falsely represented to the plaintiff that it did not want his property, but only wanted the note secured by 'A-1, gilt edged security,' and that it was necessary for them to have the security for the records to satisfy the banking department; plaintiff informed the said defendant that he would not be able to raise the money within a year because of the depression, and the said officers and agents of said defendant with the intent to deceive and defraud the plaintiff wickedly and falsely represented to the plaintiff that they would not foreclose said mortgage at the expiration of one year; and the plaintiff gave as additional security an assignment of a mortgage in the sum of Two Thousand ($2,000) Dollars; that said false representations were made by the defendant, its officers and agents, well knowing that they did not intend to live up to said representations but intended to foreclose said note and mortgage if same was not paid upon the expiration of said one year, and well knowing that the plaintiff did rely upon said representations, and well knowing that the plaintiff did not know of the defendant's false and fraudulent intention, induced the plaintiff to execute the said note and mortgage; that the plaintiff did not know that the said representations made by the defendant, its officers and agents, were false and made to deceive this plaintiff, and the plaintiff in reliance upon the truth of said representations by reason of his confidential relation with the bank, executed the said note and mortgage.''

Continuing, it stated that the property mortgaged was of the reasonable value of $100,000, and that about a year later the bank demanded additional security, but that, when plaintiff was unable to furnish it, the defendant brought an action to foreclose the mortgage. He then alleged:

''and at the same time by constant assurances and representations which were false, and made with the intent to deceive and defraud this plaintiff, all of which the said defendant well knew, that the plaintiff

need not worry that he could at any time pay the defendant bank the money which was due and they would satisfy said mortgage; that the defendant well knew of the financial condition of the country and the difficulty the plaintiff would have in refinancing the property, and by reason of their confidential relationship lulled the plaintiff into a sense of security, and induced him to believe their representations to him, that the bank still did not want the property, but only wanted the money; that thereafter defendant obtained a sheriff's deed to the plaintiff's said property, and at the same time further represented to the plaintiff that he could still have his property at any time he secured the money for the amount due the bank. . . . "

It further continued to the effect that after all these transactions the bank advised the plaintiff that, if he could secure the money to pay to the defendant the original indebtedness, plus the interest, taxes, and legal charges, it would reconvey the said property, and that, some time after the period for redemption from the foreclosure had expired, plaintiff offered to defendant Home Owners Loan Corporation bonds and cash in sufficient amount to pay the indebtedness as aforesaid, but that the defendant refused to accept the same stating that it did not at any time intend to reconvey to the plaintiff the property. There were then general allegations that all representations made by the defendant were false and fraudulent to its knowledge and made with the intent to deceive plaintiff, and that by reason of the confidential relationship existing between plaintiff and defendant the former had a right to rely upon, and did rely upon, the representations aforesaid. It was then alleged that plaintiff had been damaged by the loss of his property in the sum of $80,000, and the prayer was for $80,000 actual damages and $60,000 punitive damages.

It will be seen by the complaint that plaintiff's action bases in fraud. We have defined the elements

of actionable fraud in the case of *Moore* v. *Meyers,* 31 Ariz. 347, 253 Pac. 626, 628, as follows:

"(1) A representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted upon by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; (9) his consequent and proximate injury. 26 C. J. 1062. If these factors all appear a cause of action for fraud will unquestionably exist."

If the complaint states all these elements, plaintiff should have been permitted to present his evidence. If it does not, the court was correct in its ruling, for, if the complaint does not state a cause of action, it is a foolish thing to proceed to trial thereon, as the defect is one which may be taken advantage of at any time. Section 3777, Rev. Code 1928.

Let us then examine the complaint to see if it does set up the nine material elements of fraud set forth in *Moore* v. *Meyers, supra.* So far as the representation alleged to have been made before the action for foreclosure of the mortgage was commenced, we think it is obvious that all these elements, except the eighth, appear sufficiently upon the face of the complaint. The representation was that the mortgage was being taken merely as a matter of form to satisfy the banking authorities, and that it would not be foreclosed. That such a representation as an inducement in order to obtain a large amount of security for an unsecured debt was material cannot be questioned. Its falsity and the bank's knowledge thereof is plainly set forth, as is the plaintiff's ignorance of the falsity, the intent of the bank that it should be acted upon, and plaintiff's action, while the proximate injury, if property worth $100,000 was taken in payment for a debt of some $25,000, is obvious. The sole element

remaining is whether the plaintiff had the right to rely upon the truth of the representation, particularly when the misrepresentation was not as to an existing fact, but as to future conduct. It is plaintiff's theory that he had such right because a confidential relation existed between the parties.

It is the general rule of law that, where a relation of trust or confidence exists between two parties so that one of them places peculiar reliance in the trustworthiness of another, the latter is under a duty to make a full and truthful disclosure of all material facts, and is liable for misrepresentation or concealment, and that in such cases redress may be had for representations as to future conduct, and not merely as to past facts. 26 C. J. 1158, and cases cited. In other words, to use the homely western phrase, the party in whom confidence is thus reposed must "lay his cards on the table." The doctrine of confidential relations has been applied to different classes of relationship, husband and wife, parent and child, guardian and ward, attorney and client, partnership, joint adventurers, and perhaps many others, but, so far as we are aware, the question of whether the relation of a bank to its clients falls within the category has never been considered by the courts. It is, of course, true that the relation between a bank and a simple depositor therein is that of debtor and creditor, and ordinarily no confidential relation arises out of such circumstances, but in the present case the claim is that the relation between plaintiff and defendant was far beyond that of a mere debtor and creditor. It is alleged, and for the purpose of testing the sufficiency of the complaint we must assume it to be true, that for some twenty-three years the plaintiff was not only a customer of the bank, but its officers and directors had been his financial advisers; that he had been told repeatedly of their friendship for him and had

relied upon their advice; and that by reason of such relations he believed they would take no financial advantage of him.

■■ It may have been that generations ago, when most commercial transactions were for cash, or at least consisted merely of personal obligations between vendor and purchaser, and the highly complicated modern structure of credit and corporate securities did not exist, that banks, which were originally merely places of security where a man might deposit his cash and valuables, did not, as such, hold any greater confidential relations with their clients than those between any other two businessmen. But times have changed. It is almost inconceivable that any man should engage in financial transactions of any magnitude in the modern time without having recourse to some bank not only as a place of safety to keep his money, but as a place where he might secure loans to conduct his business. It is notorious that modern banks, before they make a loan of any extent, make a rigid investigation of the business of their customer, and even the purpose for which the loan is to be used, basing their action thereon. It is equally notorious that in many, if not most, cases an investor will consult his bank before committing himself, believing that he has the right to rely upon the advice of its officers as being given in good faith. It has even become a common, if not practically a universal, practice, for banks to advertise that they are desirous of performing many services always held to be confidential in their nature, such as trustee, executor, administrator, and the like, for all who care to do business with them. So much has this become the custom that in many cases they have attempted to extend such services to the relation of attorney and client, and it has required legislation in many states to prevent this. We are of the opinion that, in view of all these modern business practices, of

which we cannot be ignorant, that where it is alleged a bank has acted as the financial adviser of one of its depositors for many years, and that the latter has relied upon such advice, it is a sufficient allegation that a confidential relationship in regard to financial matters does exist and that, if it is proved, the bank is subject to the rules applying to confidential relations in general. This of course, does not mean that the bank may not make a reasonable legitimate profit from the client, but it does mean that it cannot appeal to the doctrine of *caveat emptor*, and that it must disclose fairly and honestly to the client all the facts which might be presumed to influence him in regard to his actions. We hold, therefore, that the complaint sufficiently stated a cause of action as existing in favor of plaintiff and against defendant at the time when the mortgage foreclosure suit was commenced.

But it is urged by defendant, even admitting that plaintiff did then have a cause of action, the subsequent events as shown in the record of the mortgage foreclosure have caused him to lose it. The trial court properly took judicial notice of the record of this foreclosure action. Let us see what it shows. It appears therefrom that on the 2d day of June, 1932, and a little more than a year after the mortgage in question was given, that defendant brought suit in the superior court of Maricopa county to foreclose the mortgage, and that plaintiff appeared in said action by his attorneys, as a defendant, and defended the same by a plea in bar and an answer to the complaint therein, contesting the right of defendant to foreclose the mortgage; that the same was tried to the court on the merits and judgment was rendered in favor of the bank, plaintiff in that case and defendant herein, foreclosing the mortgage in accordance with the terms thereof; that no appeal was ever taken from such judgment, and the same became final prior to the filing

of this action. It is defendant's position that as soon as the suit for the foreclosure of the mortgage was filed, plaintiff must have known the falsity of the representations upon which he relies as rendering the said mortgage void *ab initio*; that he did appear and defend against the foreclosure and had full and ample opportunity to raise in such defense each and all of the alleged fraudulent representations in regard to obtaining the mortgage which he is attempting to raise in the present action, and that, having failed to do so, the judgment rendered is *res adjudicata* as to the validity of the mortgage, and it may not be attacked in the present action for any of the reasons going to its original validity.

 It is the general rule that a judgment in favor of a plaintiff is *res adjudicata* as against the defendant, not only on every issue raised by the defendant but upon every issue which he could have raised as a defense against the complaint, and this is true as to a defense of fraud by which defendant was induced to enter into a contract, and, unless he pleads it as a defense to a suit on the contract, he may not make it the basis of a second suit against the plaintiff. *Kendall* v. *Silver King of Arizona M. Co.*, 26 Ariz. 456, 226 Pac. 540; *Flint* v. *Bodge,* 10 Allen, (Mass.) 128; *Lewis* v. *Nenzel,* 38 Pa. 222; *Ruff* v. *Doty,* 26 S. C. 173, 1 S. E. 707, 4 Am. St. Rep. 709; *Weedman* v. *Fowler,* 84 Kan. 75, 113 Pac. 390. But, says plaintiff, even admitting for the sake of the argument that a judgment is *res adjudicata* not only as to the issues actually raised but also as to those which might have been raised, he was prevented from raising the issue in regard to the original promise of defendant made to secure the execution of the mortgage, by reason of subsequent and additional false and fraudulent representations, and that, such being the case, the rule as contended for by defendant does not apply. That this

is an exception to the rule cannot be doubted, and, if plaintiff has properly alleged in his complaint that he was prevented from making this defense by reason of additional false and fraudulent representations, it is a sufficient plea to void the effect of the judgment. Does his complaint fall within the exception? It must be remembered that in passing on a demurrer to a complaint the latter is construed the most strongly against the pleader, for, while it is admitted for the purpose of the demurrer that the allegations of the complaint are true, it equally follows that the only admissions are as to those things which are specifically alleged or by necessary, and not merely possible, implication set up therein. *Dockery* v. *Central Ariz. L. & P. Co.,* 45 Ariz. 434, 45 Pac. (2d) 656. What, then, are the allegations on this point? They are

"at the same time by constant assurances and representations which were false and made with the intent to deceive and defraud this plaintiff. . . that the plaintiff need not worry, that he could at any time pay the defendant bank the money which was due and they would satisfy said mortgage, . . . and by reason of their confidential relationship lulled the plaintiff into a sense of security and induced him to believe their representations to him. . . . "

The record shows that he did appear and defend against the foreclosure, and, in view of that fact, we think it would require a definite and specific allegation that he failed to present the true defense involved herein by reason of further false and fraudulent representations to take the case out of the rule. We think that the foregoing language falls far short of being a specific allegation that, by reason of the representations thus made, the plaintiff failed to present the defense in question. It is true that one might perhaps infer that such was the fact, but it is not by any means a necessary inference. We hold, therefore, that

the record in the mortgage foreclosure suit is *res adjudicata* as to any false and fraudulent representations made before the judgment therein. Plaintiff, of course, had the usual period of redemption in which to satisfy the mortgage and redeem his land, but it is not alleged that he failed to make such redemption by reason of any further false representation. When the sheriff's deed was issued, the period of redemption had gone by and defendant was the owner of the property and under no legal obligation to plaintiff in regard thereto. So far as the complaint shows, the only false representation occurring thereafter was that the bank promised plaintiff that, if he could secure the money to pay off the amount of the judgment, they would reconvey to him, but that, after he had financed the proposition, they refused to keep their agreement. There is no claim that there was any consideration for this last promise, and it was therefore a mere *nudum pactum* and, for the reasons we have stated, it cannot be added to the original representations barred by the judgment and the expiration of the period of redemption, and, unless it is so added, it falls far short of the test for actionable fraud.

Since it appears that the complaint did not state a cause of action, the trial court, when it became convinced of that fact, was justified in stopping the trial at any stage of the case. It is true that, had plaintiff at this time asked leave to amend his complaint, it would have been reversible error to refuse to grant such leave, but apparently there was no request therefor. We can surmise from the pleadings that perhaps a cause of action might have been stated which, if proved by plaintiff's evidence to the satisfaction of the triers of fact, would have sustained a judgment in his favor, but we are bound by the rules of law, and must apply them to the record before us, and not to the record as it might have existed. Since the com-

plaint, taken into consideration with the record of the mortgage foreclosure suit, of which the court properly took judicial notice, did not state a cause of action, and since there was no request for leave to amend it, judgment was correctly rendered in favor of defendant.

Judgment affirmed.

McALISTER, C. J., concurs.

ROSS, J.—I concur in the result but not in the conclusion that the complaint alleges facts showing that the defendant bank sustained the relation of a trustee to plaintiff. A bank may be a trustee of its assets for the benefit of its stockholders, depositors, and creditors and be under obligation to make loans of its funds only to third persons who are able to repay the loans and interest, but it is not a trustee of the borrower. Often officers of a bank and the bank's customers are on most friendly terms and the former may frequently advise with the latter as to where or how to make investments, but who would think of holding the bank responsible as trustee of such customer and liable to him as such for poor or mistaken advice of its officers. Efficient and competent bankers do not lend money on mere friendship, and when an old customer fails for any reason to meet his unsecured loans when due, such bankers should and will take necessary steps to prevent any loss on account thereof either by legal process or by obtaining voluntary security. If plaintiff had not secured his overdue notes by a mortgage, the defendant could have sued him and attached his property, foreclosed the lien, and realized its debt much quicker than it did. No question of friendship or trusteeship would have been involved.

The facts alleged do not show any fiduciary relation between plaintiff and defendant bank but a relation of

creditor and debtor, who became such under circumstances that preclude the bank from acting as trustee either in the making of loan or in securing it by mortgage after default in payments.

These principles of law seem to me to be so just and elementary as not to need citation. Under the rule announced, bankers and managers of banking institutions cannot afford to be very friendly with their borrowing customers lest thereby they constitute their employers the trustee of the borrower, accountable to the latter for any excess of value of pledged or mortgaged property over the debts secured when and if the debtor says that was the understanding or that the security was given only to satisfy the bank examiner and not to be foreclosed according to its terms.