**SEIKALY & STEWART, P.C., a Michigan Professional Corporation, individually, Plaintiff,**

v.

**Stephen FAIRLEY; The Rainmaker Institute LLC; Inspired Marketing Concepts, Inc.; Darrin Mish, jointly and severally, Defendants.**

**The Rainmaker Institute LLC, Counterclaimant,**

v.

**Seikaly & Stewart, P.C., a Michigan Professional Corporation, individually, Counterdefendant.**

**No. CIV 13–1502–PHX–MHB.**

United States District Court, D. Arizona.

Signed May 13, 2014.

Michael P. Pianin, Pianin & Associates PC, Scottsdale, AZ, for Plaintiff/Counter-defendant.

Robert Grasso, Jr., Grasso Law Firm PC, Chandler, AZ, for Counterclaimant.

Kim Seibert Alvarado, Robert Grasso, Jr., Grasso Law Firm PC, Chandler, AZ, Richard J. Mockler, The Solomon Law Group, PA, Tampa, FL, for Defendants.

## ORDER

MICHELLE H. BURNS, United States Magistrate Judge.

Pending before the Court is Defendants Stephen Fairley and The Rainmaker Institute LLC's (collectively "TRI") Motion for Judgment on the Pleadings. (Doc. 18.) After considering the arguments raised by the parties in their briefing, the Court now issues the following ruling.

## BACKGROUND

This lawsuit arises from Plaintiff Seikaly & Stewart, P.C.'s alleged dissatisfaction with internet marketing services provided by TRI. Plaintiff filed an Amended Complaint alleging the following causes of action against all Defendants: (I) violation under 18 U.S.C. § 1962(c), which is improperly identified as a cause of action under "RICO § 1961" in the Amended Complaint; (II) violation under "RICO § 1962(d)"; and (III) common law fraud. Thereafter, TRI filed its Answer and Counterclaim against Plaintiff. The Amended Complaint states the following, in pertinent part:

Plaintiff is a Michigan law firm. (Am. Compl. ¶ 8.) TRI is based in Arizona and provides internet marketing services for small law firms and sole practitioners. (Am. Compl. ¶¶ 1, 10, 16.) Stephen Fairley owns or controls TRI. (Am. Compl.

¶ 9.) A component of the internet marketing services provided by TRI incorporates Search Engine Optimization (or "SEO"). (Am. Compl. ¶ 2.) SEO is the process of improving the visibility or ranking of a website in the results of a search engine's search results. (Am. Compl. ¶¶ 2, 3.) SEO is intended to help increase website visibility in internet search results when key terms describing law firm clients are entered into internet search engines like Google. (Am. Compl. ¶ 3.)

In July 2011, Plaintiff, through one of its attorneys, attended a TRI seminar in Orlando, Florida. (Am. Compl. ¶ 29.) At the seminar, TRI promoted its ability to establish a web presence for clients through the creation of blogs and its ability to draw web traffic to clients' websites through link building. (Am. Compl. ¶¶ 28, 30.) TRI had hosted seminars in various locations. (Am. Compl. ¶ 28.)

In September 2011, Plaintiff executed two one-year contracts with TRI. (Am. Compl. ¶ 32.) According to the Amended Complaint, one contract was entitled "The Rainmaker Institute Blog Writing and Social Media Agreement Form G." (Am. Compl. ¶ 32.) The second contract was entitled "The Rainmaker Institute Link Building 1 Year Agreement." (Am. Compl. ¶ 32.) TRI rendered services pursuant to the contracts. (Am. Compl. ¶¶ 36, 38, 42, 44.)

Plaintiff alleges that search engine methods "are constantly evolving." (Am. Compl. ¶ 22.) Google and other internet search engines implement new programs and algorithms that can interfere with link building and other SEO services. (Am. Compl. ¶¶ 39, 40.) In or about April 2012, during the term of Plaintiff's contracts with TRI, Plaintiff alleges that Google implemented "new programs and algorithms"

to enforce its policies against certain forms of "link .building," which made TRI's link building methods less valuable. (Am. Compl. ¶ 40.) Toward the end of the contract year, Plaintiff felt TRI's marketing programs had not demonstrated any improvement. (Am. Compl. ¶ 48.)

Nevertheless, Plaintiff executed a new six-month agreement for additional marketing services with TRI. (Am. Compl. ¶¶ 48–49.) Approximately two months into the new, six-month contract extension, Plaintiff "ceased dealing with TRI," except in an attempt to resolve the matter. (Am. Compl. ¶ 50.)

In its Amended Complaint, Plaintiff alleges that it is dissatisfied with the quality of the links provided by TRI. (Am. Compl. ¶¶ 36, 38.) TRI allegedly created fewer links than were required under the terms of the link building contract. (Am. Compl. ¶¶ 36, 37.) Plaintiff alleges its "web page rankings were not being achieved as represented." (Am. Compl. ¶ 42.) TRI's internet marketing services allegedly were not successful and failed to demonstrate any improvement in Plaintiff's law firm business. (Am. Compl. ¶ 48.)

On November 1, 2013, TRI filed its Motion for Judgment on the Pleadings. (Doc. 18.) Plaintiff filed its Response on December 6, 2013, and TRI filed its Reply on December 18, 2013. (Docs. 24, 25.) On February 4, 2014, the final day for joining parties and amending pleadings as set forth in the Court's Case Management Order, Plaintiff filed a pleading entitled Motion to File Amended Complaint seeking only to name and add Defendants Inspired Marketing Concepts, Inc., and Darrin Mish in place of "John Doe" named in the original Complaint. (Doc. 28.) The Court granted the Motion and Plaintiff filed the instant Amended Complaint on February

11, 2014. (Doc. 31.) [1]

## STANDARD OF REVIEW

A motion for judgment on the pleadings under Rule 12(c) "is properly granted when, taking all the allegations in the non-moving parties' pleadings as true, the moving party is entitled to judgment as a matter of law." *Fajardo v. County of L.A.*, 179 F.3d 698, 699 (9th Cir.1999); *see Elvig v. Calvin Presbyterian Church*, 375 F.3d 951, 955 (9th Cir.2004) (stating that in ruling on a Rule 12(c) motion the court must accept as true all allegations in the plaintiff's complaint and treat as false the allegations in the defendant's answer that contradict the plaintiff's allegations). In other words, judgment under Rule 12(c) is inappropriate if the facts as pled would entitle the plaintiff to a remedy. *See Merchants Home Delivery Serv., Inc. v. Hall & Co.*, 50 F.3d 1486, 1488 (9th Cir.1995).

The Court generally cannot consider evidence outside the pleadings unless the Court treats the motion as one for summary judgment under Rule 56, but the Court can take "judicial notice of undisputed matters of public record, including documents on file in federal or state courts," without converting the motion. *Harris v. County of Orange*, 682 F.3d 1126, 1132 (9th Cir.2012); *see Five Points Hotel Partnership v. Pinsonneault*, 835 F.Supp.2d 753, 757 (D.Ariz.2011) (citing *Intri–Plex Tech., Inc. v. The Crest Group, Inc.*, 499 F.3d 1048, 1052 (9th Cir.2007)).

Rule 12(c) motions for judgment on the pleadings and Rule 12(b)(6) motions to dismiss for failure to state a claim are functionally identical. *See Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (9th Cir.1989). The same standard of review applies to both types of motions. *See id.*

## DISCUSSION

In its Motion for Judgment on the Pleadings, TRI contends that pursuant to Rule 9(b) of the Federal Rules of Civil Procedure, Plaintiff has failed to allege with particularity the predicate acts of mail or wire fraud required to demonstrate a violation of 18 U.S.C. § 1962(c) or (d). Further, TRI claims that Plaintiff has not and cannot demonstrate that it has engaged in a pattern of related predicate acts that would amount to a substantive violation of 18 U.S.C. § 1962(c) or (d). Lastly, TRI alleges that Plaintiff's common law fraud claim is not pled with sufficient particularity to withstand scrutiny under Rule 9(b).

### A. Racketeer Influenced and Corrupt Organizations Act Claims

Plaintiff alleges a RICO claim against Defendants under 18 U.S.C. § 1962(c) and conspiracy to commit RICO under § 1962(d). 18 U.S.C. § 1962(c) provides that "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). A prima facie case for RICO under § 1962(c) requires "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985). Plaintiff must also show harm of a

---

1. Because the Amended Complaint only names and adds Defendants Inspired Marketing Concepts, Inc., and Darrin Mish in place of "John Doe" named in the original Com- plaint and fails to add new claims or amend the existing claims, the Court construes TRI's Motion for Judgment on the Pleadings as applying to Plaintiff's Amended Complaint.

specific business or property interest by the racketeering conduct. *See id.; Diaz v. Gates,* 420 F.3d 897, 900 (9th Cir.2005). "Racketeering activity" is any act indictable under the several provisions of Title 18 of the United States Code, including the predicate acts alleged by Plaintiff in this case—mail fraud (18 U.S.C. § 1341), and wire fraud (18 U.S.C. § 1343).

### 1. Allegations of Fraud Pursuant to Federal Rule of Civil Procedure 9(b)

For mail and wire fraud, a plaintiff must allege (1) formation of a scheme to defraud, (2) use of the United States mail or wire in furtherance of the scheme to defraud, and (3) specific intent to deceive or defraud. *See Schreiber Distrib. Co. v. Serv–Well Furniture Co., Inc.,* 806 F.2d 1393, 1399–1400 (9th Cir.1986). For predicate acts involving fraud, a plaintiff must plead the facts with the particularity required by Federal Rule of Civil Procedure 9(b). *See Edwards v. Marin Park. Inc.,* 356 F.3d 1058, 1065–66 (9th Cir.2004). Federal Rule of Civil Procedure 9(b) requires that "a party must state with particularity the circumstances constituting fraud." Fed.R.Civ.P. 9(b). Pursuant to Rule 9(b), "the pleader must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Schreiber,* 806 F.2d at 1400–01; *see Lewis v. Sporck,* 612 F.Supp. 1316, 1325 (N.D.Cal.1985) (allegations of mail fraud under section 1962(a)–1962(c) "must identify the time, place, and manner of each fraud plus the role of each defendant in each scheme").

As for the mailing requirement, use of the mails need not be an essential element of the scheme. *See Schmuck v. United States,* 489 U.S. 705, 710, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1989). Rather, any "mailing that is incident to an essential part of the scheme," (*id.* at 712, 109 S.Ct. 1443) or "a step in [the] plot," (*id.* at 710, 109 S.Ct. 1443) satisfies the mailing element. In fact, "[i]nnocent" mailings—those that "contain no false information"—or routine mailings may satisfy this element. *See id.* at 715, 109 S.Ct. 1443. Specific intent is satisfied by "the existence of a scheme which was reasonably calculated to deceive persons of ordinary prudence and comprehension, and this intention is shown by examining the scheme itself." *Schreiber,* 806 F.2d at 1400 (internal citations and quotations omitted).

■ According to the Amended Complaint, Defendants engaged in a scheme to defraud Plaintiff and other similarly-situated law firms by using techniques known by Defendants to be "bogus and harmful." Specifically, Plaintiff alleges in paragraph 3 of the Amended Complaint:

3. As is alleged more specifically below, the Victim Firms were duped into believing that the services to be provided by THE RAINMAKER INSTITUTE, a company owned and/or controlled by Defendant FAIRLEY, would be effective in making the web sites and related web pages of the Victim Firms appear high in the results of the most important internet search engines—most significantly Google—when key terms chosen by the Victim Firms to describe their practices and the services offered were entered in a search by potential clients. Plaintiff and others paid many thousands of dollars, individually and collectively to THE RAINMAKER INSTITUTE to obtain these services, only to find that they were, in most instances completely unsuccessful. THE RAINMAKER INSTITUTE disclaimed all liability for lack of success of its efforts, and this case is not brought for lack of success per se, the lack of

success merely being evidence of fraud and damages to business or property. The action is based on the fact that, at the time that the Defendants were promoting this marketing scheme to the Victim Firms, they knew that the techniques they proposed to use were in violation of the guidelines already well-established and published by Google; knew that Google was moving rapidly to crack down on violators; knew that use of these techniques would not only fail to enhance the likelihood that the Victim Firms would rise in Google's rankings but would actually be downgraded to the point where the websites being used by the Victim Firms would become "contaminated" for search engine purposes; knew that they intended to use automated programs rather than direct personal effort to create the appearance that links to the Victim Firms webpages (the key to rising in search engine rankings) were being generated in the numbers represented; and knew that they intended to cloak their schemes in allegations of "trade secrets" to avoid the balance of the scheme from coming to light.

(Am. Compl. ¶ 3.)

In paragraphs 8–19, Plaintiff names the Defendants and describes their roles in the "enterprise" stating that TRI was in the business of providing education, training on marketing for sole practitioners and small law firms, and more recently, providing direct internet marketing services for those clients, and that Defendants Inspired Marketing Concepts, Inc., and Darrin Mish were also members of the "enterprise" who focused on increasing search prominence through "link building" for clients of TRI.

Plaintiff continues stating in paragraphs 14–25 and 26–49 that through the use of the internet, telephones, and U.S. Mail, Defendants advertised and promoted their ability to establish a presence for law firms through marketing seminars and advertising, and sold those services to Plaintiff and other similarly-situated law firms and practitioners. Defendants used techniques that they knew would fail, and nonetheless continued to take money for worthless services. Plaintiff states that Defendants lied about the effectiveness of their services and concealed their methodology, and further claims that Defendants engaged in fraud by selling "unique" blog content to Plaintiff that was, "in actuality, anything but unique." Furthermore, Plaintiff alleges that Defendants fraudulently induced Plaintiff to renew its contract with them by claiming that technical defects and unforeseen changes to Google's search policies were responsible for the lack of success of Plaintiff's marketing efforts.

In paragraphs 8–11 and 29, the Amended Complaint identifies that Plaintiff is located in Michigan, that TRI is located in Arizona, and that Defendants Inspired Marketing Concepts, Inc., and Darrin Mish are located in Florida. The complaint further states that one of Plaintiff's representatives attended the "Rainmaker Retreat" on July 22–23, 2011, hosted by Defendants in Florida. Plaintiff states that the scheme was internet-based, and therefore there is no way for Plaintiff to state with precision the exact times or locations where Defendants carried out their scheme.

The Court finds that allegations set forth in the Amended Complaint are sufficient pursuant to Rule 9(b) to support RICO claims with predicate acts of mail fraud and wire fraud. Plaintiff has alleged that Defendants engaged in a fraudulent scheme with two prongs: the fraudulent "link-building" service, and the sale and posting of supposedly "unique" blog content to Plaintiff. These allegations have been pleaded with specificity: the content

of the fraud, the approximate time frame that the fraud was committed, the manner of transmission of the fraud, and from where and from whom the fraud originated.

### 2. Pattern of Racketeering Activity

■ TRI also argues that Plaintiff has failed to allege a "pattern of racketeering" or any threat of continued criminal activity that would amount to a substantive violation of 18 U.S.C. § 1962(c) and (d).

A " 'pattern of racketeering activity' requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years ... after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5). The United States Supreme Court in *H.J., Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 239, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989), defined the term "pattern" in the RICO statute as "showing of a relationship between the predicates" and of "the threat of continuing activity." *Id.* "It is this factor of continuity plus relationship which combines to produce a pattern." *Id.* (citation omitted). The requisite continuity may be shown through either a closed-ended substantial period of past conduct or an open-ended pattern of conduct with a threat of repetition. *See Allwaste, Inc. v. Hecht*, 65 F.3d 1523, 1527 (9th Cir.1995). While isolated or sporadic acts fail to satisfy the continuity requirement, acts that constitute an ongoing entity's regular way of doing business are sufficient. *See id.* at 1527–29.

Plaintiff alleges that the predicate acts, including implementing a "link-building" search engine optimization program that Defendants knew could not succeed, and promising "unique" content and then attempting to pass off "warmed-over blog content" that was harmful to Plaintiff's

marketing efforts, are related to the same scheme: to defraud Plaintiff by accepting Plaintiff's money while promising results Defendants knew they could not, or would not, achieve. Plaintiff further states in paragraphs 47 and 48 of the Amended Complaint that "[t]he ongoing practice of selling the same supposedly unique blog content to multiple parties contributed to the open end pattern of violations and predicate acts," and that Defendants continued to make fraudulent misrepresentations in order to entice Plaintiff to renew its marketing contract with TRI; to wit, that "unforeseen changes in Google's policies and a lack of follow up by TRI," rather than TRI's fraudulent conduct, was to blame for the lack of success of Plaintiff's marketing efforts. (Am. Compl. ¶¶ 47, 48.) The Court finds that although Plaintiff comes close to alleging only isolated and sporadic activity, at this stage, it has sufficiently alleged acts indicative of a continuing threat. As such, TRI's contention that Plaintiff has failed to allege a "pattern of racketeering" or any threat of continued criminal activity that would amount to a substantive violation of 18 U.S.C. § 1962(c) and (d), fails.

### B. Common Law Fraud Claim

TRI argues that Plaintiff's common law fraud claim set forth in Count III of Plaintiff's Amended Complaint is not pled with sufficient particularity to withstand scrutiny under Rule 9(b).

■ In order to maintain an action for fraud under Arizona law, a plaintiff must sufficiently plead: (1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its falsity or ignorance of its truth, (5) the speaker's intent that it be acted upon by the recipient in the manner reasonably calculated, (6) the hearer's ignorance of its falsity, (7) the hearer's reliance on its truth, (8) the right to rely on it,

and (9) a consequent and proximate injury. *See Nielson v. Flashberg,* 101 Ariz. 335, 419 P.2d 514, 517–18 (1966). In order to determine whether the elements are present, a court looks to the face of the complaint. *See Stewart v. Phoenix Nat'l Bank,* 49 Ariz. 34, 64 P.2d 101, 105 (1937); *see also Spudnuts, Inc. v. Lane,* 131 Ariz. 424, 641 P.2d 912, 914 (Ariz.Ct.App.1982) ("[a]lthough no particular language is necessary in pleading fraud, the elements constituting fraud must be found when considering the pleading as a whole").

■ Here, even a cursory reading of the Amended Complaint reveals that Plaintiff has alleged the required elements. Again, paragraph 3 of the Amended Complaint specifically states:

The Rainmaker Institute disclaims all liability for lack of success of its efforts, and this case is not brought for lack of success per se, the lack of success merely being evidence of fraud and damages to business or property. The action is based on the fact that, at the time that the defendants were promoting this marketing scheme to the Victim Firms, they knew that the techniques they proposed to use were in violation of the guidelines already well-established and published by Google; knew that Google was moving rapidly to crack down on violators; knew that use of these techniques would not only fail to enhance the likelihood that the Victim Firms would rise in Google's rankings but would actually be downgraded to the point where the websites being used by the Victim Firms would become "contaminated" for search engine purposes; knew that they intended to use automated programs rather than direct personal effort to create the appearance that links to the Victim Firms webpages (the key to rising in search engine rankings) were being generated in the numbers represent-

ed; and knew that they intended to cloak their schemes in allegations of "trade secrets" to avoid the balance of the scheme from coming to light.

(Am. Compl. ¶ 3.) Further, in paragraphs 41–43, Plaintiff alleges:

41. Upon information and belief, it quickly became even more apparent to the Defendants that their schemes would have no positive effect and might have a detrimental effect on the webpages in domain names owned by the Victim Firms; however, Defendants continued to take money for their worthless services, without disclosing that it knew that the alleged services would be of no value.

42. Upon information and belief, even after it became evident that Defendants' methods were not capable of achieving the results that had been represented to the Victim Firms and that, in fact, web page rankings were not being achieved as represented, Defendants continued to market their services in much the same way and continued to withhold from existing victims the fact that the services for which the Defendants were being paid were worthless.

43. The continued marketing by the Defendants of internet marketing services that the Defendants knew were worthless and knew were based on misleading representations to unsuspecting clients, misled the clients into believing that the sheer number of links created would yield positive optimization results. This conduct represents a pattern of activity in violation of the RICO statutes.

(Am. Compl. ¶¶ 41–43.) Thus, the Court finds that Plaintiff has alleged particular facts satisfying each of the elements of fraud against Defendants.

## CONCLUSION

Based on the foregoing,

**IT IS ORDERED** that Defendants Stephen Fairley and The Rainmaker Institute LLC's (collectively "TRI") Motion for Judgment on the Pleadings (Doc. 18) is **DENIED.**