829 P.2d 1253

Roy E. McALISTER, Plaintiff–Appellant, Cross Appellee,

v.

CITIBANK (ARIZONA), A SUBSIDIARY OF CITICORP, successor to Great Western Bank & Trust, Defendant–Appellee, Cross Appellant.

1 CA–CV 89–600.

Court of Appeals of Arizona, Division 1, Department C.

April 16, 1992.

Douglas G. Wymore and Tracey Wester-hausen, Phoenix, for plaintiff-appel-lant/cross appellee.

Brown & Bain, P.A. by Robert C. Hous-er, Jr., Douglas Gerlach and Richard C. Cooledge, Phoenix, for defendant-appel-lee/cross appellant.

## OPINION

GRANT, Judge.

This appeal considers the trial court's grant of summary judgment in favor of Citibank on the issues of consequential damages, fiduciary duty, and intentional

fraud, and its grant of Citibank's motion to dismiss for failure to state a claim upon which relief can be granted on the issues of negligent misrepresentation and breach of good faith and fair dealing.

## FACTUAL AND PROCEDURAL BACKGROUND

Roy McAlister ("McAlister") is an inventor and engineer who claims to hold over 100 patents. Since 1976, McAlister maintained various personal and business accounts with Great Western Bank, presently Citibank. In 1983, McAlister planned to develop, manufacture, and market several new products. To finance these projects, McAlister applied for and received a $500,-000 line of credit from Citibank.

In March 1985 this credit line became due. McAlister alleges that Citibank promised to renew the credit line at a competitive rate. When the credit line was not renewed, McAlister sought substitute offers. McAlister applied for a comparable line of credit with several different banks, eventually receiving two lines of credit from Liberty Bank, one for $300,000 and another for $150,000, with an interest rate of 2 percent above the prime rate. The $300,000 line of credit was used to pay off the amount still owed by McAlister to Citibank.

As a result of Citibank's alleged failure to (1) renew its credit lines with McAlister at a competitive rate, (2) transfer funds from McAlister's line of credit to his checking account, and (3) prevent checks from bouncing, McAlister alleges tort and contract damages totalling $500 million. McAlister sued Citibank for this amount.

Citibank moved to dismiss McAlister's claims for negligent misrepresentation and breach of the covenant of good faith and fair dealing for failure to state a claim upon which relief could be granted. Citibank also moved for summary judgment on McAlister's claims of intentional fraud, consequential damages, and breach of fiduciary duty. The trial court granted each of these motions. The trial court also awarded Citibank its costs. McAlister appeals from these decisions. The trial court, however, refused to award attorney's fees to either party. Citibank cross appeals, seeking attorney's fees.

## DISCUSSION

### 1. *Jurisdiction*

■ Preliminarily, we note that there is a dispute over whether we can exercise jurisdiction over each issue before us on appeal. The dispute springs from the contention that McAlister's appeal of the order denying consequential damages is not timely. For the following reasons, we believe that the September 27, 1988, partial summary judgment erroneously included Rule 54(b) language regarding consequential damages, as it was not a final appealable order disposing of a claim. We conclude that we have jurisdiction over all of the issues raised in this appeal.

On September 27, 1988, the trial court ordered that the "[p]laintiff is denied any recovery of consequential damages, including damages for lost profits, sales, market share, consulting fees, appreciation, opportunity costs and patent rights on all claims based upon any alleged failure to loan or advance money, whether sounding in tort or contract."[1] This order included the Rule 54(b) language that "there is no just reason for delay with respect to the entry of said final judgment."[2] Ariz.R.Civ.P. 54(b). McAlister filed a motion for reconsideration of this order on April 21, 1989. That motion was denied as was a subsequent motion to vacate the September 27th order. Finally, the trial court denied McAlister's motion for reconsideration of his

---

[1]. The September 27 order also denied the plaintiff any recovery upon the defendant's charging "default interest on the plaintiff's loan for the period following March 1, 1985." That portion of the order is not before us on appeal.

[2]. Rule 54(b) states in relevant part:

> When more than one claim for relief is presented in an action, ... the court may direct the entry of final judgment as to one or more but fewer than all of the claims ... only upon an express determination that there is no just reason for delay and upon an express direction for entry of judgment....

motion to vacate and his motion for new trial. McAlister appeals, in part, from the denial of his motion for new trial.

Citibank argues that this court has no jurisdiction over that part of the appeal relating to the September 27, 1988, order since McAlister failed to timely file his motion for new trial. Ariz.R.Civ.P. 59(d). McAlister responds that his appeal is timely because the September 27, 1988, order relating to consequential damages was not a final, appealable order. Since the order merely eliminated a potential remedy while not disposing of a single claim, it was improper for the trial court to include Rule 54(b) language. *Sisemore v. Farmers Ins. Co.*, 161 Ariz. 564, 779 P.2d 1303 (App. 1989). Therefore, McAlister argues that until the trial court issued an order disposing of one of the substantive issues related to consequential damages, the partial summary judgment was not final and appealable.

Before a trial court may certify judgment as to less than all multiple claims, it must find that judgment is "final" in that it is the ultimate disposition of an individual claim. *Davis v. Cessna Aircraft Corp.*, 168 Ariz. 301, 812 P.2d 1119 (App.1991).

In *Sisemore*, the plaintiffs "alleged a contract claim and a tort claim for insurer bad faith." 161 Ariz. at 566, 779 P.2d at 1305. In an order containing Rule 54(b) language the trial court granted partial summary judgment and denied recovery of punitive damages. The court of appeals held that the order only limited the type of recovery and did not dispose of any claims. Therefore, inclusion of Rule 54(b) language was improper as the order was not final and appealable. Similarly, the order here, by denying consequential damages, simply limits the type of recovery, while the underlying "claims remain to be litigated." *Id.* Thus, since the September 27, 1988, order was not final, McAlister's appeal is timely. Our exercise of jurisdiction in this matter is proper.

### 2. *Standards of Review*

#### a. *Motion to Dismiss—Rule 12(b)(6)*

■ The trial court dismissed McAlister's claims for negligent misrepresenta-tion and breach of good faith and fair dealing for failure to state a claim upon which relief could be granted. Ariz.R.Civ.P. 12(b)(6). On review, this court assumes the allegations of the complaint to be true and will uphold the dismissal only if the plaintiff is not entitled to any relief under the facts stated in the complaint. *Donnelly Constr. Co. v. Oberg/Hunt/Gilleland*, 139 Ariz. 184, 186, 677 P.2d 1292, 1294 (1984).

#### b. *Summary Judgment—Rule 56(c)*

■ The trial court granted Citibank's motion for summary judgment on the issues of consequential damages, breach of a fiduciary relationship, and intentional fraud. Summary judgment is properly granted by the trial court "if the facts produced in support of the claim have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the proponent of the claim." *Orme School v. Reeves*, 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990); *see also Wagenseller v. Scottsdale Memorial Hosp.*, 147 Ariz. 370, 388, 710 P.2d 1025, 1043 (1985).

### 3. *Substantive Issues*

#### a. *Consequential Damages*

■ In the trial court's September 27, 1988, grant of partial summary judgment, the court denied the recovery of consequential damages, either in tort or contract. Consequential damages are those reasonably foreseeable losses that flow from a breach of contract. *See Renner v. Kehl*, 150 Ariz. 94, 97–98, 722 P.2d 262, 265–266 (1986); *see also Drop Anchor Realty v. Hartford Fire Ins. Co.*, 126 N.H. 674, 496 A.2d 339, 342 (1985). Consequential damages include lost future profits. *Rancho Pescado, Inc. v. Northwestern Mut. Life Ins.*, 140 Ariz. 174, 680 P.2d 1235 (App. 1984); *see also Seaman v. United States Steel Corp.*, 166 N.J.Super. 467, 400 A.2d 90, 93 (App.Div.1979).

■ Here, the trial court denied consequential damages for a breach of contract to loan money. Generally, the damage for

such a breach is the difference between the contracted for interest rate and the interest rate at the time of breach. *United Cal. Bank v. Prudential Ins. Co.*, 140 Ariz. 238, 295–296, 681 P.2d 390, 447–448 (App.1983). However, McAlister relies upon a well-established exception to this general rule which allows for special, or consequential, damages if the defendant knew of or could foresee the use of the loan money. *Higgins v. Arizona Savings & Loan Ass'n*, 90 Ariz. 55, 64, 365 P.2d 476, 482–483 (1961) (citing *Hadley v. Baxendale*, 9 Exch. (Eng.) 341, 354) ("[I]f the special circumstances under which the contract was actually made were communicated by the plaintiffs to the defendants, and thus known to both parties, the damages resulting from the breach of such a contract, which they would reasonably contemplate, would be the amount of injury which would ordinarily follow from a breach of contract under these special circumstances so known and communicated."). McAlister argues that this special circumstances exception applies here since Citibank was aware of how the loan would be used.

While we acknowledge this exception, we hold that it does not apply here when the plaintiff could procure the loan from another source. Annotation, *Damages—Breach of Contract to Lend Money*, 4 A.L.R. 4th 682 § 5 (1981); *United Cal. Bank*, 140 Ariz. at 297, 681 P.2d at 449 ("For breach of a contract to loan money for the purpose of discharging encumbrances upon real estate, the loss occasioned by foreclosure of the liens may not be recovered, where there is nothing to show that the money could not have been procured in the normal money market....").

There is no dispute in the evidence that McAlister could procure the loan money elsewhere. The evidence shows that he applied for comparable credit lines at several other banks and was extended credit by at least Liberty Bank. Since there is no dispute in the evidence, the trial court correctly ruled that as a matter of law consequential damages should not be recovered. Therefore, we affirm the trial court's grant of summary judgment on this issue.

### b. *Fiduciary Relationship*

■ The trial court granted Citibank's motion for summary judgment that Citibank owed no fiduciary duty to McAlister. McAlister argues that whether a fiduciary relationship exists between him and Citibank is a question of fact. McAlister is correct "provided there is sufficient evidence to submit the issue. When the evidence is insufficient to support a verdict, the trial court has a duty to decide the issue." *Rhoads v. Harvey Publications, Inc.*, 145 Ariz. 142, 148, 700 P.2d 840, 846 (App.1984).

It is well settled in Arizona "that the relationship between a Bank and an ordinary depositor, absent any special agreement, is that of debtor and creditor." *Valley Nat. Bank of Phoenix v. Electrical Dist. No. 4*, 90 Ariz. 306, 316, 367 P.2d 655, 662 (1961); *Travelers Indem. Co. v. State*, 140 Ariz. 194, 196, 680 P.2d 1255, 1257 (App.1984). Only once has an Arizona court held that a fiduciary relationship existed between a bank and its customer. *Stewart v. Phoenix Nat. Bank*, 49 Ariz. 34, 64 P.2d 101 (1937). In *Stewart*, the supreme court concluded that a fiduciary duty was owed by a bank to its customer because (1) the bank acted as the customer's financial advisor for many (twenty-three) years, and (2) the customer relied upon the bank's financial advice. *Id.* at 44–46, 64 P.2d at 106–107.

The evidence before the trial court fails to indicate that Citibank acted as McAlister's financial advisor, or that McAlister relied upon Citibank's financial advice. The evidence only shows that McAlister was Citibank's customer for approximately ten years. Without more, the trial court correctly concluded that as a matter of law no fiduciary relationship existed between these parties. *Copesky v. Superior Court*, 229 Cal.App.3d 678, 280 Cal.Rptr. 338 (1991). Therefore, we affirm summary judgment as to this issue.

### c. *Breach of Good Faith and Fair Dealing*

■ The trial court granted Citibank's motion to dismiss McAlister's claim for

breach of the implied covenant of good faith and fair dealing. The law implies a covenant of good faith and fair dealing in every contract. *Rawlings v. Apodaca,* 151 Ariz. 149, 153, 726 P.2d 565, 569 (1986). This implied covenant prevents either party from acting "to impair the right of the other [to] receive the benefits which flow from their agreement...." *Id.* at 153, 726 P.2d at 569. While the remedy for breach of this implied covenant is ordinarily by action on contract, in certain circumstances "the breach ... may provide the basis for imposing tort damages." *Burkons v. Ticor Title Ins. Co. of Cal.,* 168 Ariz. 345, 355, 813 P.2d 710, 720 (1991); *Wagenseller,* 147 Ariz. at 383, 710 P.2d at 1038. However, a "special relationship" must exist in order to support a tortious breach of the implied covenant of good faith and fair dealing. *Burkons,* 168 Ariz. at 355, 813 P.2d at 720.[3] Such a relationship is characterized either by a fiduciary relationship, elements of public interest (e.g., unequal bargaining positions), or adhesion. *Id.; Rawlings,* 151 Ariz. at 158, 726 P.2d at 574.

In the present matter, McAlister alleges a tortious breach of the implied covenant of good faith and fair dealing. Since McAlister has alleged a tortious breach of the covenant, he has the burden of showing that the contract between the parties established one of the special relationships described above.

### i. Fiduciary Relationship

██ As we have already determined, no fiduciary relationship exists between these parties. *See Copesky,* 229 Cal.App.3d at 693, 280 Cal.Rptr. at 348.

### ii. Unequal Bargaining Positions

██ As a matter of law, in Arizona "a mere difference in bargaining power without more does not establish" a special relationship between the parties. *Oldenburger v. Del E. Webb Dev. Co.,* 159 Ariz. 129, 133, 765 P.2d 531, 535 (App.1988) (finding no

special relationship between a vendor and purchaser). The evidence indicates that McAlister, a sophisticated customer, shopped around for competitive financing and settled on Citibank because of its favorable loan terms. There is nothing in the evidence to suggest that McAlister and Citibank were not bargaining on equal terms. In *Rodgers v. Tecumseh Bank,* 756 P.2d 1223, 1226 (Okl.1988), the Oklahoma Supreme Court declined to find a special relationship between parties to a commercial loan agreement:

> The borrowers shopped around and came to the bank because it offered the most favorable interest rates, and in negotiating the contract the borrowers were successful in having a favorable term inserted into the printed form. Here we have arms'-length negotiating, a relatively equal bargaining capacity and no snares or traps for the unwary, quite unlike the circumstances surrounding the issuance of an insurance policy.

### iii. Contract of Adhesion

██ The only agreements between the parties consisted of promissory notes evidencing McAlister's loan obligations. We hold that as a matter of law promissory notes are not contracts of adhesion. *Federal Sav. & Loan Ins. Corp. v. Musacchio,* 695 F.Supp. 1044, 1053 (N.D.Cal.1988); *Rodgers,* 756 P.2d at 1226.

### iv. Conclusion

Even assuming McAlister's allegations to be true, the trial court correctly dismissed McAlister's tort claim for breach of the implied covenant of good faith and fair dealing because there is no special relationship between the parties. Therefore, we affirm the trial court's dismissal of this claim.

### d. *Intentional Fraud*

The trial court granted Citibank's motion for summary judgment on the issue of

---

**3.** While the court in *Burkons* refused to limit liability for breach of the implied covenant of good faith and fair dealing to insurance contracts, as the court did in *Rawlings, Burkons* reaffirms the principle that such liability must be premised upon a special relationship. The court found such a special relationship exists between an escrow agent and its principal.

intentional fraud. The court concluded that McAlister failed to establish intent, one of the elements of fraud. McAlister argues that whether he has shown intent is a jury question. 37 Am.Jur.2d, *Fraud and Deceit* § 196 (1968). Further, McAlister asserts that intent to deceive may be inferred from the facts. In the alternative, McAlister argues that Citibank committed constructive fraud.

### i. Intentional Fraud

 A showing of fraud requires a concurrence of nine elements, including the "speaker's intent that [the false representation] be acted upon by the recipient in the manner reasonably contemplated." *Echols v. Beauty Built Homes, Inc.*, 132 Ariz. 498, 500, 647 P.2d 629, 631 (1982); *see also Stewart v. Phoenix Nat. Bank*, 49 Ariz. at 43, 64 P.2d at 105–106. Fraud can be based upon unfulfilled promises or expressions concerning future events only if statements regarding those events "were made with the present intent not to perform." *Spudnuts v. Lane*, 131 Ariz. 424, 426, 641 P.2d 912, 914 (App.1982). The party alleging fraud bears the burden of establishing the intent to deceive. *Waddell v. White*, 56 Ariz. 420, 427, 108 P.2d 565, 569 (1940). Unless the plaintiff can prove that the defendant intended to deceive the plaintiff at the time the representation was made, the claim cannot stand.

 In the present matter, McAlister testified that he did not believe that Citibank's employees intended to deceive him through their representations. However, McAlister testified that he believed that an unknown someone in the bank intended to deceive him. This opinion, without more, is inadequate to establish Citibank's intent to deceive. *Echols*, 132 Ariz. at 500, 647 P.2d at 631, (quoting *In re McDonnell's Estate*, 65 Ariz. 248, 253, 179 P.2d 238, 241 (1947)) ("Fraud may never be established by doubtful, vague, speculative, or inconclusive evidence."). Therefore, since there is no dispute in the evidence that McAlister failed to establish Citibank's intent to deceive, we hold that the trial court correctly

granted summary judgment in favor of Citibank on the issue of intentional fraud.

### ii. Inferred Fraud

 McAlister argues that if Citibank's intent to deceive is not explicit, then, "if the speaker's words were intended to cause the hearer to act in reliance thereon, i.e., if it was intended that the hearer's conduct be influenced, an intent to deceive may be inferred." *Union Bank v. Safanie*, 5 Ariz. App. 342, 346, 427 P.2d 146, 150 (1967). While we agree that intent can be inferred, we hold that an intent not to perform or to deceive must be established independent of a showing of the defendant's failure to perform. *Lewart v. Woodhull Care Center Assoc.*, 549 F.Supp. 879, 883 (S.D.N.Y. 1982); *see also Rowe Intern., Inc. v. J–B Enterprises, Inc.*, 647 F.2d 830, 834 (8th Cir.1981) ("An intention to deceive can be proved by direct evidence or by circumstantial evidence from which intent could be inferred.... However, failure of performance is insufficient to establish this intent....") (citations omitted).

 In the present matter, McAlister testified that Citibank promised to match competitive loan rates and terms, transfer funds from his line of credit to his checking account, and prevent checks from bouncing. McAlister argues, in effect, that Citibank's present intent not to perform these promises can be inferred from the fact that they were never fulfilled. We hold that this assertion, without any independent evidence that Citibank did not intend to fulfill its promises, is inadequate to infer intent to deceive. Therefore, the trial court correctly granted summary judgment on this issue by refusing to infer intent to deceive.

### iii. Constructive Fraud

 Alternatively, McAlister argues that Citibank's actions amount to constructive fraud.

> Constructive fraud ... is a breach of legal or equitable duty which, irrespective of the moral guilt or intent of the party charged, the law declares fraudulent because of its tendency to deceive others, to violate public or private confidence, or to injure public interests. Dis-

honesty of purpose and intent to deceive are not essential elements of constructive fraud.

*Rhoads*, 145 Ariz. at 148, 700 P.2d at 846. The court in *Rhoads* determined that a relationship, akin to a fiduciary relationship, must exist in order for constructive fraud to occur. *Id.* at 148–149, 700 P.2d at 846–847 ("Where a relation of trust and confidence exists between two parties so that one of them places peculiar reliance in the trustworthiness of another, the latter is under a duty to make a full and truthful disclosure of all material facts and is liable for misrepresentation or concealment. The breach of this duty gives rise to an action in constructive fraud.") (citation omitted).

As an example of such a relationship, the court in *Rhoads* cites *Stewart.* However, relevant to this case, and as discussed above, *see supra*, p. 212, 829 P.2d p. 1258, "the doctrine of confidential relations ... ordinarily ... would not apply to the debtor-creditor relationship of a bank and depositor." *Id.* at 149, 700 P.2d at 847. Since there is no evidence in the record to indicate a confidential relationship between McAlister and Citibank, we hold that the trial court correctly granted summary judgment in favor of Citibank on the issue of constructive fraud.

### e. *Negligent Misrepresentation*

■ McAlister also appeals the trial court's grant of Citibank's motion to dismiss McAlister's claim for negligent misrepresentation. Arizona recognizes a cause of action for negligent misrepresentation as set forth in the Restatement (Second) of Torts § 552 (1977). *St. Joseph's Hosp. v. Reserve Life Ins.*, 154 Ariz. 307, 742 P.2d 808 (1987); *Van Buren v. Pima Community College District Board*, 113 Ariz. 85, 546 P.2d 821 (1976); *Ariz. Title Ins. & Trust Co. v. O'Malley Lumber Co.*,

14 Ariz.App. 486, 484 P.2d 639 (1971). Negligent misrepresentation is a separate tort from that of intentional fraud. *Pettay v. Ins. Mktg. Services*, 156 Ariz. 365, 752 P.2d 18 (App.1987).

■ Most jurisdictions that recognize a cause of action for negligent misrepresentation do not apply it to promises of future conduct. *See, e.g., Bank of Shaw v. Posey*, 573 So.2d 1355 (Miss.1990). In *Posey*, the court held that a bank officer's promises with respect to the bank's future conduct were not misrepresentations upon which a claim of negligent misrepresentation could be based. The *Posey* court stated: "The promise of future conduct is, as a matter of *law*, not such a representation as will support recovery under a theory of negligent misrepresentation." 573 So.2d at 1360 (emphasis in original). *See also Murray v. Xerox Corp.*, 811 F.2d 118, 123 (2d Cir. 1987) (promises of promotion and transfer to an employee by management not negligent misrepresentation); *Margrove Inc. v. Lincoln First Bank*, 54 A.D.2d 1105, 388 N.Y.S.2d 958, 959 (1976) (failure to honor mortgage commitment not negligent misrepresentation). While no Arizona court specifically has addressed this issue, we nevertheless adopt this general rule here. Negligent misrepresentation requires a misrepresentation or omission of a *fact.* A promise of future conduct is not a statement of fact capable of supporting a claim of negligent misrepresentation.

■ Accepting McAlister's allegations as true, as we must when reviewing a dismissal, those allegations relating to McAlister's negligent misrepresentation claim all relate to future events.[4] Since we hold that no claim of relief for negligent misrepresentation can be premised upon a promise of future conduct, we affirm the trial court's grant of dismissal.

---

**4.** McAlister alleges the following:
 a) That Great Western Bank personnel would contact Mr. McAlister before returning any checks for insufficient funds, as had been the policy since 1976;
 b) That Great Western Bank would renew Plaintiff's $500,000 line of credit in a timely manner;
 c) That checks returned for insufficient funds in error would be corrected and that any

overdraft fees charged to the account would be reversed;
 d) That Plaintiff would be allowed to draw to the full amount of his credit line limit;
 e) That loan transfer requests would be processed in a timely manner;
 f) That Plaintiff would be given an accurate accounting of his loan payoff amount;

#### f. *Costs and Attorney's fees*

Finally, the trial court found that Citibank was the successful party and therefore awarded Citibank its costs. McAlister appeals from this decision. The trial court also concluded that this case was a tort action and did not arise out of contract; therefore neither party was entitled to its attorney's fees pursuant to Ariz.Rev.Stat. Ann. ("A.R.S.") section 12–341.01. Citibank cross appeals from this decision.

#### i. Costs

A.R.S. section 12–341, provides that "[a] successful party to a civil action shall recover ... all costs expended or incurred therein unless otherwise provided by law." McAlister argues that Citibank was not the successful party and is not, therefore, entitled to its costs. Rather, McAlister argues that because he received $800 to compensate an overpayment by Citibank after the litigation began, he is the successful party.

When determining the successful party for the purposes of awarding costs, we view the totality of circumstances and the relative success of the litigants. *Nataros v. Fine Arts Gallery of Scottsdale,* 126 Ariz. 44, 49, 612 P.2d 500, 505 (App.1980). Here McAlister recovered $800 from Citibank to correct an overpayment when applying the Liberty Bank line of credit to McAlister's Citibank loan obligations. This payment was not a result of any motion by McAlister or order by the court. It was made independently of the litigation. Moreover, Citibank has prevailed on all other issues. Therefore, we affirm the trial court's decision that Citibank was the prevailing party and affirm the award of costs to Citibank.

#### ii. Attorney's fees

The trial court denied both parties attorney's fees, concluding that the cause of action did not arise out of contract. Pursuant to A.R.S. section 12–341.01(A), the trial court has the discretion to award attorney's fees to the successful party in an action arising out of contract. Citibank argues that this case, though involving tort claims, is one arising out of contract.

"[A]ttorney's fees may be awarded pursuant to A.R.S. § 12–341.01(A) based upon facts which show a breach of contract, the breach of which may also constitute a tort ... as long as the cause of action in tort could not exist *but for* the breach of the contract." *Sparks v. Republic Nat. Life Ins. Co.,* 132 Ariz. 529, 543, 647 P.2d 1127, 1141 (1982) (emphasis in original); *see also ASH, Inc. v. Mesa Unified Sch. Dist. No. 4,* 138 Ariz. 190, 193, 673 P.2d 934, 937 (App.1983). Turning to the facts of the present case, McAlister has alleged a breach of contract as well as other tort causes of action. However, there would be no subsequent tort claims without the alleged breach of contract to loan money. Therefore, we hold that this case does arise out of contract as contemplated by A.R.S. section 12–341.01. We reverse the trial court's denial of attorney's fees. We remand to the trial court for a determination of the amount of those fees to Citibank, the successful party.

We further award Citibank attorney's fees incurred by this appeal in an amount to be determined upon its compliance with Rule 21(c), Arizona Rules of Civil Appellate Procedure.

KLEINSCHMIDT, P.J., and EHRLICH, J., concur.

---

g) That Plaintiff would have a credit line of $500,000, which could be drawn at Plaintiff's request;

h) That the various business plans submitted by Plaintiff to Defendant would be reviewed so that, when requested and as necessary, individual credit lines could be opened to provide development capital for each individual project;

i) That deposits would be credited to plaintiff's account immediately, unless plaintiff were informed otherwise;

j) That Great Western Bank wanted Plaintiff's business and would provide terms competitive with any other Bank's offer; and

k) That computer problems or renewal problems would be rectified in a prompt manner.

Plaintiff's First Amended Complaint, para. 42.