880 P.2d 1135

George LASLEY and Velma Lasley, husband and wife, and individually, Plaintiffs–Appellants,

Rebecca Lasley Dunning, Mark Lasley and Meredith Lasley, Plaintiffs–Intervenors–Appellants,

v.

William K. HELMS, M.D., Defendant–Appellee.

No. 1 CA–CV 93–0182.

Court of Appeals of Arizona, Division 1, Department A.

May 10, 1994.

Review Denied Oct. 4, 1994. *

---

** John Foreman, Maricopa County Superior Court Judge, and William J. O'Neil, Pinal County Superior Court Judge, were authorized to participate in the disposition of this matter by the Chief Justice of the Arizona Supreme Court pursuant to article VI, section 3 of the Arizona Constitution.

* Moeller, J., of the Supreme Court, recused himself and did not participate in the determination of this matter.

Broening Oberg & Woods, P.C. by James R. Broening, Cynthia V. Cheney, Martha M. Burns, Phoenix, for plaintiffs-appellants.

Roush, McCracken & Guerrero by Charles D. Roush, Phoenix, for plaintiffs-intervenors-appellants.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, P.A. by Harding B. Cure, Christopher Robbins, Phoenix, for defendant-appellee.

## OPINION

GARBARINO, Judge.

The plaintiffs, George and Velma Lasley, George Lasley's children, and his former wife, appeal from the trial court's grant of summary judgment in favor of the defendant, William K. Helms, M.D., and the trial court's denial of their motion for new trial, both of which were based on the trial court's finding that their claims were barred by the statute of limitations. We reverse and remand.

## FACTS AND PROCEDURAL HISTORY

█ In reviewing the trial court's grant of summary judgment, we view the facts and reasonable inferences therefrom in the light most favorable to the plaintiffs, the parties against whom judgment was entered. *Hill–Shafer Partnership v. Chilson Family Trust,* 165 Ariz. 469, 472, 799 P.2d 810, 813 (1990).

In February 1960, George Lasley began seeing Dr. Helms as his primary care physician. Over the next twenty-nine years, Helms prescribed a sleeping pill known as Doriden for Lasley's use. In March 1991, the plaintiffs sued Helms, alleging that Helms had committed medical malpractice in prescribing the sleeping pill, which they claim is an addictive drug. The plaintiffs claim that Lasley's drug addiction damaged him physically, mentally, and emotionally, and caused severe problems in his family and business.

Although the plaintiffs admit that Lasley was aware of his strong desire to continue taking Doriden and suspected that the drug was causing some of his problems, they contend that Helms assured both Lasley and his first wife that the prescription was appropriate. Lasley testified that he directly asked Helms if he was addicted or being harmed by the drug and that Helms assured Lasley that he was not addicted and that taking the drug was perfectly safe.

At the request of his second wife, Lasley visited her physician, Dr. Ole Braaten, in 1984. Braaten testified that he told Lasley he personally disapproved of Doriden and that he himself did not prescribe the drug because it is addicting and leads to withdrawal symptoms. He said that he advised Lasley to stop taking the drug. However, Braaten also stated in his deposition that he was not being judgmental about any other doctor prescribing Doriden for Lasley's use because, according to what Lasley had told him, Braaten did not have enough knowledge to know whether it was being prescribed in a particularly dangerous way. He stated that another doctor may know how to use the drug properly.

Lasley testified that following his consultation with Braaten, he went back to Helms, the physician to whom he had entrusted his physical well-being for so many years, and again asked if he was addicted and if the drug was harming him. Lasley claims Helms reassured him that the drug was not harming him and that he did not believe Lasley was addicted to it. Lasley explained that he accepted Helms' word over Braaten's because Helms had been his doctor for many years.

Lasley continued taking Doriden until October 1989 when his daughter became aware of his drug use, investigated the possible consequences of the drug, and scheduled an intervention. Lasley alleges that he did not know of his addiction to Doriden until this October 1989 intervention.

George and Velma Lasley filed their lawsuit against Helms on March 29, 1991, within two years of the October 1989 intervention, alleging that Helms negligently overprescribed an addictive drug which caused dam-

age to Lasley and their relationship. Lasley's son, daughter, and first wife thereafter filed a motion to intervene, which the trial court granted. Helms moved for summary judgment, arguing that the two-year statute of limitations had expired because Lasley knew as early as 1984 that Doriden was an addictive drug which could have been the source of his problems. The trial court granted summary judgment in favor of Helms against all plaintiffs, finding that Lasley either knew or should have known or discovered by 1984 that he had been injured by the alleged negligence of Helms, that therefore the statute of limitations began running in 1984, and that the limitation period was not tolled between 1984 and 1991. Following the trial court's denial of their motion for new trial, the plaintiffs appealed.

## ISSUES

The plaintiffs raise five issues on appeal:

1. Whether the statute of limitations was tolled under the doctrine of constructive fraud based on Helms' assurances that Lasley was not addicted to Doriden and that the drug was safe,

2. Whether the trial court misinterpreted the discovery rule,

3. Whether a material question of fact exists regarding the reasonableness of Lasley's inquiry into the consequences of taking Doriden after his consultation with Braaten,

4. Whether Lasley's alleged addiction constituted a disability sufficient to toll the statute of limitations, and

5. Whether the trial court's decision was the product of bias or prejudice.

## DISCUSSION

■ This Court will affirm summary judgment only when the facts presented by the opposing party in support of the claim or defense have so little probative value that reasonable minds could not agree with the conclusion being advanced. *See Orme School v. Reeves,* 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990).

Plaintiffs first argue that the statute of limitations was tolled until October 1989 because Helms concealed from Lasley the pos-

sible harmful effects of prescribing Doriden. Their argument is based on their claim that, after Lasley discussed the drug with Braaten, he again asked Helms about the harmful effects of the drug and Helms again reassured him that the drug was safe and effective and that his continued use of the drug for nearly thirty years was neither harmful nor addictive. The plaintiffs contend that Helms' continued reassurances amount to constructive fraud which tolled the statute of limitations until Lasley's intervention in October 1989.

Helms argues that it is sufficient that Lasley knew or reasonably should have known of the essential facts giving rise to the cause of action. Helms contends that Lasley knew that he needed Doriden and that the drug caused his impotence and other problems. However, Helms overlooks that he was the one who, after inquiry by Lasley, affirmatively denied the possibility that Lasley was addicted and was being harmed by the drug. In *Gutierrez v. Mofid,* 39 Cal.3d 892, 218 Cal.Rptr. 313, 317, 705 P.2d 886, 890 (1985), referred to by both parties, the court, in analyzing the discovery exception applicable to a malpractice case, stated:

[T]he professional's fiduciary and confidential relationship with his client or patient both compels the professional to disclose, rather than conceal, his error and mitigates the injured person's duty to discover it independently. A delayed limitations period encourages the professional tortfeasor to fulfill his "fiduciary duty of full disclosure; it prevents the fiduciary from obtaining immunity for an initial breach of duty [i.e., the malpractice] by a subsequent breach of the obligation of disclosure." (*Neel [v. Magana],* supra, 6 Cal.3d [176] at p. 189, 98 Cal.Rptr. 837, 491 P.2d 421 [1971]; see also *Sanchez [v. South Hoover Hospital],* supra, 18 Cal.3d [93] at p. 97, 132 Cal.Rptr. 657, 553 P.2d 1129 [1976].)

■ Constructive fraud is defined as a breach of a legal or equitable duty which, without regard to moral guilt or intent of the person charged, the law declares fraudulent because the breach tends to deceive others, violates public or private confidences, or injures public interests. *Morrison v. Acton,* 68 Ariz. 27, 35, 198 P.2d 590, 595 (1948); *McAlister v. Citibank,* 171 Ariz. 207, 214, 829 P.2d

1253, 1260 (App.1992). Neither intent to deceive nor dishonesty of purpose is an essential element of constructive fraud. *Morrison*, 68 Ariz. at 35, 198 P.2d at 595; *McAlister*, 171 Ariz. at 214–15, 829 P.2d at 1260–61. Constructive fraud also requires the existence of a fiduciary or confidential relationship. *Morrison*, 68 Ariz. at 35, 198 P.2d at 595. The relationship between Helms as doctor and Lasley as patient was a confidential relationship, akin to that between the dentist and patient in *Acton v. Morrison*, 62 Ariz. 139, 155 P.2d 782 (1945), and *Morrison*. As such, the relationship called for "frank and truthful information from [Helms] to [Lasley], and [Helms], in keeping from his patient knowledge of [his] true condition ...," would have "violated a very sacred duty he owed him." *Acton*, 62 Ariz. at 143, 155 P.2d at 784.

■ Constructive fraud, if proven, is sufficient to toll the running of a statute of limitations until the plaintiff either knows, or through due diligence should have known, of the fraud. *Morrison*, 68 Ariz. at 35–36, 198 P.2d at 595–96; *Acton*, 62 Ariz. at 144, 155 P.2d at 784.

Under the facts as we must view them, Helms knew the truth about the possible harm done to Lasley by prescribing the drug, and Helms concealed this truth from Lasley. Although we agree with the trial court that Braaten put Lasley on notice in 1984 of the possible harm Lasley could suffer from his continued use of Doriden, Lasley thereafter discussed the issue with Helms only to be reassured that the drug was safe and that his continued use of it would not harm him. Helms' active concealment of the possible effects of the drug, if proven, is nothing less than constructive fraud. His failure to disclose the possible effects of the drug, if true, is a clear breach of the confidential relationship between a doctor and patient. Lasley was entitled to rely upon the advice of his physician without suspecting that he was being deceived. Lasley was entitled to more from his fiduciary relationship with his doctor.

■ We find that reasonable minds could agree with the plaintiffs' theory of constructive fraud, thus creating a jury question about whether Helms breached his duty to Lasley. If proven, a jury question remains regarding the tolling of the statute of limitations based upon when Lasley either knew, or through due diligence should have known, of the fraud.

Because we reverse summary judgment on this issue, we need not address the remaining issues.

Accordingly, the trial court's orders granting summary judgment in favor of Helms and denying the plaintiffs' motion for new trial are vacated and the case is remanded to the trial court.

CLABORNE, J., concurs.

WEISBERG, Presiding Judge, dissenting.

I respectfully dissent because I believe that Lasley learned those facts sufficient to reveal his cause of action by 1984. Therefore, those claims based upon events allegedly occurring prior to March 28, 1989, should be barred by the statute of limitations.

Constructive fraud is sufficient to toll the running of a statute of limitations, but only until such time as the plaintiff either knows, or through due diligence should have known, of the fraud. *Morrison v. Acton*, 68 Ariz. 27, 35–36, 198 P.2d 590, 595–96 (1948). "Notwithstanding a defendant's continuing efforts to conceal, if plaintiff discovers the claim independently, the limitations period commences." *Sanchez v. South Hoover Hosp.*, 18 Cal.3d 93, 132 Cal.Rptr. 657, 662, 553 P.2d 1129, 1134 (1976). *Accord Morrison*, 68 Ariz. at 36, 198 P.2d at 596; *Malapanis v. Shirazi*, 21 Mass.App.Ct. 378, 487 N.E.2d 533, 539 n. 8 (1986); *Duncan v. Augter*, 62 Or.App. 250, 661 P.2d 83, 87 (1983).

Lasley testified that he believed in the 1970's that Doriden was the source of his impotence. Knowing he was addicted to it, he unsuccessfully tried to quit Doriden during that time. In 1984, Dr. Braaten told Lasley that Doriden was a "bad drug" and that Lasley should stop taking it. Dr. Braaten pointedly refused to prescribe the drug. Lasley's response to Dr. Braaten's advice was to begin stockpiling Doriden because he was fearful that Dr. Helms might die, ending his source of supply.

From these facts there can be no doubt that Lasley knew, or should have known, of sufficient facts to reveal his cause of action at

least by 1984. Any statements by Dr. Helms to the contrary could not change the reality that Lasley already knew that he was addicted to Doriden.

The majority relies upon *Morrison*, which is distinguishable from the facts in this case. In *Morrison*, the plaintiff had no knowledge of the cause of his injury precisely because of his dentist's continuing concealment. In the instant case, the facts clearly indicate that Lasley knew the nature of his injury, (addiction); the cause of his injury (Doriden); and the identity of the sole supplier of the injury-causing medication (Dr. Helms). Helms' alleged statement of reassurance as to the safety of Doriden did not come until *after* Lasley *already knew* of the facts establishing his cause of action. Lasley's personal knowledge of his injury could not be extinguished by Helms' statements otherwise.

For these reasons, I would affirm the trial court.