NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

KOOL RADIATORS, INC., an Arizona corporation, *Plaintiff/Appellee*,

*v.*

STEPHEN EVANS and DEBRA EVANS, an Arizona married couple,
*Defendant/Appellant*.

AEGIS JET, LLC, a Delaware limited liability company, *Defendant/Appellee*.

No. 1 CA-CV 13-0756
FILED 9-1-2015

Appeal from the Superior Court in Maricopa County
No. CV2011-055070
The Honorable J. Richard Gama, Judge

**AFFIRMED**

COUNSEL

Osborn Maledon, P.A., Phoenix
By Colin F. Campbell
*Counsel for Plaintiff/Appellee Kool Radiators, Inc.*

Stephen Evans, Phoenix
*Defendant/Appellant*

Debra Evans, Phoenix
*Defendant/Appellant*

Palecek & Palecek PLLC, Scottsdale
By Karen A. Palecek
*Counsel for Defendant/Appellee Aegis Jet, LLC.*

---

## MEMORANDUM DECISION

Judge Peter B. Swann delivered the decision of the court, in which Presiding Judge Randall M. Howe and Judge Andrew W. Gould joined.

---

**S W A N N**, Judge:

**¶1** Aegis Jet ("Aegis"), a charter aviation business, finalized a purchase agreement for the acquisition of another charter aviation business, Aero Jet Services ("Aero Jet").[1] Stephen Evans, a partner in Aegis, persuaded the president of Kool Radiators Inc. ("Kool") to invest $250,000 in Aegis to help fund the acquisition. However, Aegis defaulted on the terms of the purchase agreement and the agreement was terminated without Kool's knowledge. Kool then filed a complaint against Evans and Aegis alleging that they had committed securities fraud, negligent misrepresentation, and common law fraud. A jury agreed and found in favor of Kool on all counts. Evans appeals and for the reasons that follow, we affirm.

## FACTS AND PROCEDURAL HISTORY

**¶2** In June 2007, Aegis sent a letter of intent to Aero Jet stating that it planned to purchase the company. In 2006 and 2007 Aegis was operating at a net loss, and by the end of 2007 Aegis had lost $1.2 million. Aero Jet's revenues, however, were expanding 80-100% per year during that same time period.

**¶3** The parties entered into a purchase agreement and Aero Jet agreed to sell 100% of its membership interests to Aegis for $15 million. The parties' purchase agreement also required that a nonrefundable deposit of $1 million be delivered to Aero Jet via deposit in a trust account by July 20, 2007.

**¶4** Evans signed the purchase agreement on behalf of Aegis and negotiated the agreement with Aero Jet. Evans also attempted to put together the funds to pay the deposit required by the purchase agreement.

---

[1] We note that Aegis Jet, LLC, did not appear as a party to this appeal.

**¶5** Ron Davis, the president of Kool, had worked with Evans years earlier when Davis's business engaged Evans as a forensic accountant. Evans approached Davis about "trying to get some investors together to purchase Aero Jet." Evans went to Davis's house to explain the investment. Davis testified that "[Evans] had the financial statements with him" and Evans's plan was to buy Aero Jet, run it for a few years, and then sell it and split the profits. According to Davis, Evans represented that if Aegis did not receive bank financing to purchase Aero Jet, the investors would get their money back. Davis testified that Evans said "I guarantee you won't lose any money on this thing."

**¶6** Davis testified that Evans did not tell him the purchase agreement required $1 million in nonrefundable purchase money. He also testified that Evans had not given Davis a business plan for Aegis as a stand-alone company. Therefore, Davis was under the impression that his money was being used to purchase Aero Jet, and although he knew he was purchasing an interest in Aegis, the ultimate goal was to acquire Aero Jet.

**¶7** On August 8, 2007, Aero Jet notified Evans that Aegis was in default under the terms of the purchase agreement. Three days later, Evans sent Davis an e-mail but did not mention the default. On August 27, 2007, Aero Jet notified Evans that because Aegis had failed to make the deposit and perform under the purchase agreement, the agreement had been terminated. That same day, Davis met Evans to sign a subscription agreement and invested $250,000 in Aegis through Kool. Evans did not tell Davis at any point that the purchase agreement with Aero Jet had defaulted or terminated.

**¶8** On October 2, 2007, a deposit of $250,000 was made into an Aero Jet bank account in Aegis's name to show that Aegis still intended to buy Aero Jet. Aegis told Aero Jet that although the purchase agreement had been terminated, it would obtain the rest of the money and use the terms of the original purchase agreement. According to Aero Jet, the deposit was always nonrefundable. Aegis never came up with the rest of the $1 million deposit.

**¶9** A few months later, Davis asked Evans for an update on the acquisition and Evans responded that he was having trouble getting the financing. Davis asked for the return of his money, and Evans responded that the partners needed the money to operate Aegis. Evans represented that as soon as he could find an investor to take Davis's place, he would return Kool's money. Kool's money was never returned. Davis testified that Kool's membership in Aegis was worthless and that he relied on everything that Evans had told him in investing the money.

**¶10** In March 2011, Kool filed a complaint against Evans and Aegis alleging securities fraud, negligent misrepresentation, and common law fraud.

Kool sought a return of its investment with interest, punitive damages, and attorney's fees and costs.

¶11        A jury returned a verdict for negligent misrepresentation and found the full amount of damages to be $250,000.  The jury also found Evans 100% at fault and Aegis 0% at fault.  The jury returned a verdict against Evans and Aegis on the securities fraud and common law fraud claims and found that Evans was 50% responsible and Aegis was 50% responsible for damages of $250,000.  The court awarded Kool attorney's fees in the amount of $261,250.94.  Evans appeals.

## DISCUSSION

¶12        Evans raises three discrete arguments on appeal and argues that Kool prejudiced him at trial in a number of ways. We address each of these arguments in turn.

I.        THE TESTIMONY OF AEGIS'S TAX ACCOUNTANT

¶13        John Folse prepared Aegis's tax returns and Kool called him as a witness to testify about the general ledgers and accounts Aegis maintained. Evans objected on relevance grounds and argued that the information had no bearing on Davis's decision to invest.  Kool responded that the financial status of Aegis was relevant because it demonstrated that no one would have invested in Aegis without the acquisition of Aero Jet, and that Davis was effectively investing in Aero Jet.  The court overruled the objection but granted Evans a standing objection to Folse's testimony.  Folse testified that in 2006 and in 2007 Aegis was operating at a net loss.

¶14        Evans now asserts that Davis did not rely on the financial performance of Aegis when he decided to invest; rather, he relied on the plan of acquisition, and the testimony was therefore not relevant.  We disagree.

¶15        "Reasonable discretion is given to the trial court in determining relevancy of offered evidence, and such discretion will not be disturbed on appeal unless it clearly has been abused."  *State v. Spoon*, 137 Ariz. 105, 111 (1983).

¶16        Davis testified that Evans had given him financial information on both companies including information about Aegis's financial history, but he could not recall what that information was.  Davis also testified that when he gave Evans the $250,000, he did not know that Aegis was losing money or that it was in debt.  Folse's testimony about Aegis's actual financial performance was relevant regardless of whether Davis was aware of that information before making his investment.  If Davis was not made aware of Aegis's financial status

at the time of his investment, then that omission supports Kool's claim for fraud under A.R.S. § 44-1991(A)(2).  If on the other hand, Davis was aware of Aegis's poor financial performance, then Folse's testimony supports Kool's claim that Davis was only investing so that Aegis could acquire Aero Jet.  And if Davis was aware of Aegis's financial performance, then whether Davis actually relied on that information was a question of fact for the jury to decide.  *See Lerner v. DMB Realty, LLC*, 234 Ariz. 397, 402, ¶ 15 (App. 2014) *(*holding that questions about materiality and reasonable reliance with regard to a fraud claim are usually for the jury).  The trial court did not abuse its discretion when it admitted Folse's testimony.[2]

## II.  MOTION FOR JUDGMENT AS A MATTER OF LAW

**¶17**      At the close of Kool's case, Evans moved for a judgment as a matter of law under Ariz. R. Civ. P. 50.  Evans argued that Davis's testimony regarding his belief that there was a purchase agreement was, given its inconsistencies, too contradictory for a reasonable jury to find in Kool's favor.  He also argued that for there to be fraud there had to be a misrepresentation of fact, and Kool had to demonstrate that Evans made a statement guaranteeing that Davis would get his money back, and that there was no evidence Evans ever intended that to be the case.  Evans finally argued that there was insufficient evidence to support an award of punitive damages.  The court denied the motion with regard to the claims for negligent misrepresentation and fraud but granted the motion with regard to punitive damages.

**¶18**      Evans argues on appeal that the trial court erred when it denied his motion for judgment as a matter of law on the grounds of Davis's conflicting testimony.

**¶19**      Ariz. R. Civ. P. 50(a)(1) provides that "[i]f during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the

---

[2]      Evans also argues that Kool failed to disclose Folse's testimony before trial.  But Kool's third supplemental disclosure statement listed Folse as a witness and stated that he was expected to testify that "at the time Kool Radiators made its investment, Aegis Jet was operating at a net loss as reflected on the tax returns he prepared.  Plaintiff was never told this and it is confirmatory evidence that the only reason for buying the membership interest was for the acquisition of Aero Jet."

court may determine the issue against the party and may grant a motion for judgment as a matter of law."

**¶20** "We review *de novo* the denial of a motion for judgment as a matter of law under Rule 50." *Goodman v. Physical Res. Eng'g, Inc.*, 229 Ariz. 25, 27, ¶ 6 (App. 2011). "We will uphold the ruling unless 'the facts produced in support of the claim or defense have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the proponent of the claim or defense.'" *Id.* (internal quotation marks omitted) (citation omitted).

A. Negligent Misrepresentation

**¶21** Arizona recognizes a cause of action for negligent misrepresentation as provided in the Restatement (Second) of Torts § 552 (1977). *McAlister v. Citibank (Arizona)*, 171 Ariz. 207, 215 (App. 1992). That section provides:

> (1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

> (2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered

>> (a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and

>> (b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

**¶22** "Negligent misrepresentation requires a misrepresentation or omission of a *fact*. A promise of future conduct is not a statement of fact capable of supporting a claim of negligent misrepresentation." *McAlister*, 171 Ariz. at 215.

**¶23** Evidence was presented that Evans told Davis that Aegis had agreed to purchase Aero Jet and that Kool's investment would be used to fund

that acquisition. Davis also testified that Evans told him that if the acquisition fell through, all of the investors would get their money back. Evidence was also presented that Evans failed to disclose to Davis that there was a written agreement that required a $1 million nonrefundable deposit, that Aegis had defaulted under the agreement, and that Aero Jet had terminated the agreement for failure to pay the deposit. Davis also testified that he relied on everything that Evans had told him in investing Kool's money.

¶24    This evidence was sufficient for a reasonable jury to conclude that Evans supplied false information or omitted material information, that Evans knew Davis was relying on his representations, and that Evans breached a duty and Kool was damaged.

### B.    Securities Fraud

¶25    A.R.S. § 44-1991(A)(2) provides that it is unlawful for a person in connection with a transaction involving an offer to sell or buy securities, or a sale or purchase of securities, to "[m]ake any untrue statement of material fact, or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading."

¶26    Once again, evidence was presented that Evans told Davis that Aegis had agreed to purchase Aero Jet, that Kool's investment would be used to fund the acquisition, and that if the acquisition fell through, all of the investors would get their money back. Evidence was also presented that Evans did not disclose to Davis that there was a written agreement that required a $1 million nonrefundable deposit, that Aegis had defaulted under the agreement, and that Aero Jet had terminated the agreement for failure to pay the deposit.

¶27    This evidence was sufficient to permit a reasonable jury to conclude that Evans made an untrue statement of material fact or failed to state a material fact necessary in order to make the statements he made to Davis not misleading.

### C.    Common Law Fraud

¶28    "A civil claim for fraud is established by showing that the tortfeasor made a false and material representation, with knowledge of its falsity or ignorance of its truth, with intent that the hearer would act upon the representation in a reasonably contemplated manner, and that the hearer, ignorant of the falsity of the representation, rightfully relied upon the representation and was thereby damaged." *Dawson v. Withycombe*, 216 Ariz. 84, 96, ¶ 26 (App. 2007) (emphasis omitted) (footnote omitted).

¶29    Evidence was presented that Davis invested Kool's money because Evans had promised him that the money would be returned if the acquisition fell

through or Aegis was unable to secure funding from a bank. Evidence was also presented that Evans signed the purchase agreement on behalf of Aegis and therefore knew that the $1 million deposit was nonrefundable.

¶30            This evidence was sufficient to permit a reasonable jury to conclude that Evans made a false representation knowing his statements were false at the time they were made, and that Davis rightfully relied on that false information and was thereby damaged.

III.      THE FINAL JURY INSTRUCTIONS

¶31            Evans argues that the trial court erred when it allowed Kool to "conceal from the jury the controlling language of A.R.S. [§] 44-2001(A), thereby preventing the jury from discovering that [Kool] had suffered no loss or damage[.]"

¶32            A.R.S. § 44-2001(A) provides that:

> [a] sale or contract for sale of any securities to any purchaser in violation of [Arizona's securities fraud statutes] is voidable at the election of the purchaser, and the purchaser may bring an action in a court of competent jurisdiction to recover the consideration paid for the securities, with interest, taxable court costs and reasonable attorney fees, less the amount of any income received by dividend or otherwise from ownership of the securities, on tender of the securities purchased or the contract made, or for damages if the purchaser no longer owns the securities.

¶33            The final jury instructions stated, "[i]f you find that Defendants are liable to Plaintiff for securities fraud, then Plaintiff is entitled to recover the monies paid for the membership interest in Aegis Jet." Evans did not object to this language in the jury instructions. Regarding the calculation of damages for securities fraud, Evans's counsel stated, "I think the verdict on this particular issue is correctly drawn; and that it is accurate and that it should stand."

¶34            Evans now asserts that because Davis took an income tax deduction on his investment in Aegis, he has not actually suffered any loss. He therefore contends that the language in the statute providing for damages "less the amount of any income received by dividend or otherwise" should have been included in the jury instructions for the jury to consider in its calculation. We disagree.

¶35            Ariz. R. Civ. P. 51(a) provides: "No party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and

8

the grounds of the objection." Even if Evans had objected to the instructions (which he did not), we would find no error. As an initial matter, Evans provides no evidence to support his claim that Kool did not suffer any loss. Rather, he states that Kool has never produced any tax returns, "making it impossible for Evans to introduce any evidence at trial regarding these tax write-offs." Additionally, even assuming *arguendo* that Kool took the entire $250,000 as an income tax deduction, this does not qualify as "income received by dividend or otherwise." Recoveries of losses pursuant to a judgment may have tax consequences in the future, but deductions of losses do not qualify as income received. We find no error in the final jury instructions.

## IV. EVANS'S OTHER ARGUMENTS

**¶36** Evans makes an array of arguments regarding Kool's "mischaracterizations" and other instances in which Evans believes Kool misled the court and the jury. But Evans provides no legal basis for these claims and merely cites statements made by Kool's counsel with which he disagrees. Evans challenges various exhibits, the closing arguments, and the testimony of Kool's witnesses, stating "[t]his egregious and malicious misconduct irreversibly prejudiced the Evans Defendants."

**¶37** Evans did not object to the introduction of the majority of the evidence, or to Kool's closing arguments at trial. "Failure to object to questions, evidence, testimony, arguments, and instructions waives these matters on appeal." *State v. Wilson*, 113 Ariz. 308, 310 (1976). Therefore, we decline to address the evidence and arguments to which Evans did not object at trial.

**¶38** Evans argues that the trial court erred when it allowed Davis to testify about a balance sheet that detailed the amount of cash available to Aegis in the form of investment capital. At trial, Evans objected to the evidence on relevance grounds and the court overruled the objection. "We review the trial court's determination of relevance for an abuse of discretion." *State ex rel. Thomas v. Duncan*, 216 Ariz. 260, 264, ¶ 13 (App. 2007). Evidence is relevant if it has any tendency to make a fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. Ariz. R. Evid. 401. The balance sheet at issue was sent to Davis by Evans via e-mail and indicated that Aegis had over $4 million in assets. However, in reality Aegis was operating at a net loss. This evidence was relevant to Kool's claims for fraud and negligent misrepresentation because it had a tendency to make the fact that Evans supplied Davis with false information and made an untrue statement of material fact more probable. Therefore, the trial court did not abuse its discretion.

**¶39** Evans also asserts that Aegis and Kool had improperly cooperated at trial. To support his claim, Evans cites an e-mail between Aegis and Kool's

counsel discussing a possible settlement agreement. Discussions about a possible settlement agreement are not improper -- the law favors such conversations and agreements. *See Phillips v. Musgrave*, 23 Ariz. 591, 593 (1922). Evans's claim that this communication was somehow improper or prejudicial is without merit.

¶40 Evans contends that the trial court erred in "refusing to allow [Evans] to introduce testimony and evidence regarding meetings in October of 2007 relating to the oral agreement between Aegis and Aero Jet." But Evans cites nothing in the record to show that he attempted to introduce evidence related to an oral agreement. Contrary to Evans's assertion, Kool's statement in closing argument that "the idea that they had entered into any other agreement is a complete fiction, contradictory to the evidence" was not a "misrepresentation." Moreover, Evans did not object to this statement at trial and therefore waived any argument on appeal related to the statement. *See Acuna v. Kroack*, 212 Ariz. 104, 114, ¶ 37 (App. 2006) (holding that although plaintiff's counsel made improper statements during closing argument, defendant did not object and therefore waived any argument relating to those statements on appeal).

¶41 Evans also argues that Kool's use of brackets to change "will" to "had" in a quote in the joint pretrial statement was done to intentionally mislead the court. We disagree. By including the term "had" in brackets, the author made it clear that the particular portion of the quotation was different than the language in the original document. *See* Bryan A. Garner, *The Redbook: A Manual on Legal Style* § 1.41(a), at 30 (2d ed. 2006). We reject Evans's argument that this change was somehow misleading.

¶42 Finally, Evans argues that his own counsel failed to provide certain evidence and impeach certain witnesses. That is not a matter properly before this court. "In the civil context, a party generally cannot obtain post-judgment relief because of the inexcusable neglect of counsel." *Glaze v. Larsen*, 207 Ariz. 26, 31, ¶ 20 (2004).

## V.    ATTORNEY'S FEES AND COSTS

¶43 Kool requests attorney's fees and costs on appeal and Evans requests his fees and costs on appeal. We deny Evans's request because he is not the successful party. In exercise of our discretion, we also deny Kool's request for attorney's fees. However, Kool is entitled to recover its costs under A.R.S. § 12-341, upon compliance with ARCAP 21.

**CONCLUSION**

¶44        For the foregoing reasons, we affirm.



Ruth A. Willingham · Clerk of the Court
FILED: ama